W. E. MOORE, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, FORD F. HARVEY and ROBERT J. DUNHAM, Receivers, Appellants.

**Kansas City Court of Appeals, May 24, 1915.**

1. **NEGLIGENCE: Street Railways: Jumping Off Cars.** The plaintiff sued to recover damages for injuries sustained while riding on one of the defendant's street cars. The plaintiff was compelled to ride on the rear step holding onto the handrail. While the car was running at a rapid rate of speed, the plaintiff thought that an ice wagon standing on the street would strike him, when the car passed, so he jumped to avoid injury and was injured in the fall. *Held*, that plaintiff was entitled to recover and that the verdict was not excessive.

2. ———: ———: ———. When one alarmed at an appearance of danger jumps from a car that is moving and wishes to recover damages for injuries received thereby he must show, first, that the peril or alarm must have been caused by negligence of the one against whom indemnity is sought; second, that the apprehension of peril, from the standpoint of the injured person must have been reasonable, and, third, the appearance of danger must have been imminent leaving no time for deliberation. On the other hand the danger must be adjudged by the circumstances as they appear, and not by the result.

3. **RECEIVERS: Street Railways: Liability.** The receivers of a railroad or railway who are vested with the power to manage and operate it are liable as receivers for injuries resulting from negligence in its operation and the company, as such, cannot be *held* responsible for such negligence.

4. **PLEADING: Demurrer: After Verdict.** A petition after verdict may be attacked only on the grounds that it states no cause of action, or that the court had no jurisdiction over the subject-matter and all other defects are treated as waived.

5. **EVIDENCE: Conclusion.** Where opinion evidence is elicited from a witness, that a certain blow might or could be the cause of an injury, it is not invading the province of the jury, and is not subject to an objection that it fails to observe the proper distinction between opinion and conclusion evidence.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

AFFIRMED IN PART; REVERSED IN PART.

*John H. Lucas, Chas. A. Stratton* and *John C. Bramhall* for appellants.

(1) The court erred in refusing to give appellants' instruction in the nature of a demurrer to the evidence at the close of the plaintiff's case; as well as appellants' instruction in the nature of a demurrer at the close of the entire case. Andrews v. Lynch, 27 Mo. 167; Syme v. The Indiana, 28 Mo. 335; Ivory v. Carlin, 20 Mo. 142; Staley Co. v. Wallace, 21 Mo. App. 128; Houck v. Bridwell, 28 Mo. App. 644; Boatmen's Bank v. McMenamy, 35 Mo. App. 198; Paddock v. Somes, 102 Mo. 226; Hudson v. Cahoon, 193 Mo. 547; Hubbard v. Slavens, 218 Mo. 596; Strauss v. Transit Co., 102 Mo. App. 644; Marx v. Watson, 168 Mo. 133; Jackson v. Min. Co., 106 Mo. App. 441, 445; Ball v. Neosho, 109 Mo. App. 683. (2) The court erred in refusing to give appellants' instructions 9, 10, 12 and 13. Joyce v. Railroad, 219 Mo. 344; Flaherty v. Railroad, 207 Mo. 318; Peterson v. Railroad, 111 S. W. 37; Schaefer v. Railroad, 128 Mo. 64; Barth v. Railroad, 142 Mo. 535; Spencer v. Railroad, 111 Mo. App. 653; Peck v. Railroad, 178 Mo. 617; Glass v. Galvin, 80 Mo. 297; 1 Blashfield on Instructions, sec. 90. (3) The verdict is so excessive as to indicate it was the result of passion and prejudice upon the part of the jury, and should not be allowed to stand. Pratt v. Blakey, 5 Mo. 205; Richardson v. Fire Brick Co., 122 Mo. App. 529;

Chlanda v. Transit Co., 213 Mo. 264; Van Loon v. Light Co., 160 S. W. 66; McGraw v. O'Neil, 123 Mo. App. 691, 705; Partello v. Railroad, 217 Mo. 645, 661; Baker v. Admrs., 36 Mo. 345; Price v. Evans, 49 Mo. 396; Spohn v. Railroad, 87 Mo. 71, 84; Rigby v. Tr. Co., 153 Mo. App. 335. (4) The court erred in overruling appellants' motion for new trial and in arrest of judgment. Kleiber v. Railroad, 107 Mo. 240; Bischoff v. Railroad, 121 Mo. 216; Debolt v. Railroad, 123 Mo. 496; McPeak v. Railroad, 128 Mo. 617; Ephland v. Railroad, 57 Mo. App. 147; Hall v. Transf. Co., 135 Mo. App. 119. (5) The court erred in the admission of improper testimony offered by the respondent, over the objection of the appellants. Roscoe v. Railroad, 202 Mo. 577; Taylor v. Railroad, 185 Mo. 239; State v. Hyde, 234 Mo. 251-253; Castanie v. Railroad, 249 Mo. 192; Wood v. Railroad, 181 Mo. 433; Longan v. Weltmer, 180 Mo. 322; Taylor v. Railroad, 185 Mo. 239; Torreyson v. Railroad, 246 Mo. 696; DeMaet v. Stor. Co., 231 Mo. 615.

*O. E. Robinson* and *H. H. McCluer* for respondent.

JOHNSON, J.—Plaintiff jumped from a moving street car on which he was riding as a passenger and sustained injuries which he alleges were caused by negligence in the operation of the car. He sued the Metropolitan Street Railway Company, the owner, and Ford F. Harvey and Robert J. Dunham, the receivers of that company. The petition alleges that the defendant company "at all times herein mentioned, operated and controlled . . . a certain line of street railway in Kansas City known as the Twelfth street line; that the defendants Ford F. Harvey and Robert J. Dunham, are, and were at all the times herein mentioned, receivers of said Metropolitan Street Railway Company, having been appointed as said receivers by the Honorable WILLIAM C. HOOK, Judge of the United States

Circuit Court, on July 3, 1911; that they are, and were at all times herein mentioned, duly qualified and acting as such receivers, and as such, had and exercised exclusive management, operation and control of said Metropolitan Street Railway Company; that defendant, Metropolitan Street Railway Company is, and was at all times herein mentioned, a common carrier of passengers for hire.''

Further it is alleged that on account of the car being crowded with passengers, plaintiff was compelled ''to ride on said car by standing on the lower rear steps of said car and with his hands to hold to the iron rods attached to said car adjacent to the rear entrance thereof; that while the plaintiff was in that position on said car and while in the exercise of due and proper care to avoid being hurt and injured, the defendant company carelessly, wrongfully and negligently caused its said car to be run at a high and dangerous rate of speed along and upon its said tracks and so close to a large ice wagon that the plaintiff became and was in imminent danger of being struck by coming in contact with said wagon, and that to avoid being so struck by said wagon, plaintiff was compelled to and did jump from said car, to the street, and in doing so was hurt, injured and damaged as follows,'' etc.

No demurrer to the petition was filed by either defendant. The Railway Company's answer is a general denial. In the separate answer of the receivers they admit ''that on the 3rd day of June, 1911, they were duly and regularly appointed receivers of the Metropolitan Street Railway Company; and that they are now and ever since said date have been in charge of the property of said Metropolitan Street Railway Company,'' and answer with a general denial. The jury return a verdict for plaintiff in the sum of $1600, judgment was rendered against all of the defendants on the verdict and they appealed.

The injury occurred at eight o'clock in the morning of September 19, 1912, on Twelfth street between Oak and McGee streets in Kansas City. Plaintiff had transferred from a Troost avenue car to a westbound Twelfth street car. The latter was very crowded, passengers were standing in the rear vestibule and on the steps and plaintiff was compelled to stand on the lower step on one foot and to hold to a handhold—a position which caused his body to project beyond the outside line of the car. Plaintiff stood facing the way the car was going and while it was running between Oak and McGee streets, he observed a large ice wagon standing in the street between the track and the curb, which appeared to be too close to the track to permit the safe passage of his body. The car approached and passed the wagon at a speed estimated by the witnesses at twenty miles per hour. Plaintiff states "I realized when I was within twenty feet of the ice wagon that I could not go by, that I could not pass because the ice wagon and the car were too close together and if I had stayed on I realized I would have been knocked off . . . I made an effort to get into the car but it was useless because the car was crowded and there were people there that prevented me from going—getting time to get in the car." Plaintiff jumped to the pavement at a point about twenty feet from the wagon and was propelled by the great momentum he received from the high speed of the car, into a violent collision with the rear end of the wagon. He states "I hit the pavement twice and was thrown into the ice wagon. I struck it with my mouth, head first; I was thrown head first into it."

The pavement between the car track and curb was ten feet wide, the ice wagon was six feet, eight inches wide, and the overhang of the car was two feet; consequently, if the north wheels of the wagon were touching the curb, the space between the passing car and wagon was sixteen inches. A pedestrian who saw the

injury testified: "The car seemed . . . packed to its fullest extent, and the people were holding on the outside on the steps as best they could all the way on the outside, there was no room for them to get inside, they were just hanging along the steps wherever they could get a hold. . . . I noticed this young man on the car there just before they got to the ice wagon, standing there . . . and it seemed like he was just in mid-air, just suspended anyhow, say just for a second, and the next second, why, he hit the wagon and was thrown underneath, the next I saw of him he was lying there on the ground unconscious."

A passenger who was standing on the lower step testified: "It (the car) was running pretty fast and there was another fellow beside me, I don't know who he was, was standing kind of behind me, and he says, 'we better squeeze in here,' he says, 'we are going pretty fast,' and I says 'I guess somebody will get hurt,' and about another block further, why, somebody who was standing right in front of me got off, or jumped off and was hit by a wagon, and I squeezed in, and just in time to get clear myself, and I got off at McGee street. There wasn't very much space. I don't know exactly how close it was, but there wasn't very much space. I know I only had a little room when I went by."

Plaintiff was the only passenger who jumped from the car and no one remaining on the step collided with the wagon.

The manager of the railway testified that the receivers were operating the line at the time of the injury, and had been operating it since June 3, 1911. The motorman introduced as a witness by defendants stated that the car was running eight or ten miles per hour when it passed the wagon. Further he said that he was working for the defendant company and did not know the line was in the hands of receivers. Despite

the latter statement, we think the fact is conclusively established that the car was being operated by the receivers and not by the company. The answer of the receivers admits and the testimony of the manager proves that fact.

In their argument that the demurrer to the evidence should have been given as to the receivers, on the ground that no cause of action is pleaded or proved against them, counsel for defendants lay stress on the testimony of the motorman and of the conductor that they were employed by the company, but in their subsequent argument on the question of the liability of the company, they call' attention to the testimony of the manager that the receivers were operating the road at the time of the injury, and say ''that being true and it was all of the evidence on that point, there is a failure of proof as to the defendant company of material allegations of the petition which are necessary to establish a liability upon this defendant company.'' We are justified in treating the fact of the operation of the car by the receivers at the time of the injury as conceded by both parties and, so regarding it, hold that the court erred in not directing a verdict for the defendant company. Receivers of a railroad who are vested with the power to manage and operate it are liable as receivers for injuries resulting from negligence in its operation and the company cannot be held responsible for such negligence. [High on Receivers (4 Ed.), sec. 396.]

As is pertinently observed in Turner v. Railroad, 74 Mo. l. c. 604: ''Upon what principle can a company be held liable for any injury inflicted upon any one by a train of cars of which the company had no control? Can the right to operate and manage its road and rolling stock be taken from the company and given to a receiver, under whose control and management it is operated, to the exclusion of the company, and yet

the latter be responsible to a person injured in conse-
quence of the negligent operation of the road by such
receiver? The question suggests its answer, and it is
adverse to the plaintiff.'' This doctrine has the sup-
port of the great weight of authority in other jurisdic-
tions. [Ohio, etc., Co. v. Davis, 23 Ind. 553; Bell v.
Railroad, 53 Ind. 57; Railroad v. Anderson, 10 Bradw.
(Ill. App.) 313; Hicks v. Railroad, 62 Tex. 38; Henning
v. Sampsell, 236 Ill. 375; Schurr v. Railway, 98 Ia.
418; Railroad v. Bricker, 65 Kans. 321; Archambeau
v. Railroad, 170 Mass. 272; Tobin v. Railway, 185 Mass.
337; Chamberlain v. Railroad, 71 Fed. 636; Gableman
v. Railroad, 82 Fed. 790.]

There is no merit in the argument that the re-
ceivers should be excused from liability in this action
for the reason that the petition alleges that the oper-
ators of the car whose negligence caused the injury
were servants of the company. There are allegations
to which defendants call our attention which appear
to be inconsistent with the fact that the receivers were
operating the car, but they were defects which were
waived by answer to the merits. The allegations that
the receivers had and exercised exclusive management
and control of the road and that plaintiff's injury was
caused by negligence in the operation of the car on
which he was a passenger contained the elements of a
good cause of action against the receivers. After ver-
dict a petition may be attacked only on the grounds that
it states no cause of action, or that the court had no
jurisdiction over the subject-matter, and all other de-
fects are treated as waived.

But it is argued that plaintiff should not be al-
lowed to recover for the reason that his evidence fails
to disclose a good cause of action and does show that
his injury was caused by his own negligence in jumping
from the car. Plaintiff was impelled by fear of a
collision with the wagon to save himself by jumping
from the car and the question of greatest importance

is whether or not his evidence will support a reasonable inference that his fear and consequent action were justifiable under the circumstances and had their proper origin in negligence in the operation of the car.

A carrier is liable to a passenger for negligence in suddenly confronting him with a real or apparent danger of imminent injury and thereby terrifying him into yielding to injurious impulses of the instinct of self-preservation. The test of the carrier's liability in such cases is not whether there was actual peril but whether there was an appearance of imminent danger that reasonably should have been anticipated as too terrifying for an ordinary passenger to face without danger of being seized by uncontrollable and injurious alarm. [Agnew v. Railway, 178 Mo. App. 119.]

The Supreme Court in Kleiber v. Railway, 107 Mo. l. c. 249, have stated the pertinent rules as follows: "*First,* the peril or alarm must have been caused by the negligence of the one against whom indemnity is sought; *second,* the apprehension of peril, from the standpoint of the injured person, must have been reasonable, and, *third,* the appearance of danger must have been imminent, leaving no time for deliberation. On the other hand the danger must be judged by the circumstances as they appear, and not by the result." [See also Bischoff v. Railway, 121 Mo. 216; Debolt v. Railway, 123 Mo. 496; McPeak v. Railway, 128 Mo. 617; Ephland v. Railway, 57 Mo. App. 147; Hall v. Trans. Co., 135 Mo. App. 119; Harshaw v. Railroad, 173 Mo. App. l. c. 467; Butts v. Gaar-Scott, 164 Mo. App. l. c. 332; Blyston-Spencer v. Railroad, 152 Mo. App. l. c. 139.]

The issues of defendant's negligence in the operation of the car and of plaintiff's contributory negligence would not be concluded in law by the facts that plaintiff might have passed the wagon in safety if he had remained on the step and that no other passen-

ger on the step followed his example. "It has long been settled that a party having given another reasonable cause for alarm cannot complain that the person so alarmed has not exercised cool presence of mind, and thereby find protection from responsibility from damages resulting from the alarm." [Kleiber v. Railway, supra.] The real question is whether plaintiff had reasonable cause to be seized with a sudden, overwhelming fear of imminent injury and that such cause and its natural consequences should have been anticipated and guarded against by the operators of the car.

The evidence abundantly supports the inference that it was negligence for the motorman to run the car, with its projecting cluster of humanity, at high speed, with such narrow space between the car and wagon that it could not be known in advance with reasonable certainty that the wagon could be passed in safety. Other passengers on the step were alarmed at the appearance of danger and succeeded in crowding themselves into a narrower space than they had been occupying. Plaintiff, who was standing with only one foot on the extreme west end of the step was in a more exposed position than any of the others and could not move closer to the car. The circumstances of his situation will support a reasonable conclusion that he would have collided with the wagon if he had not jumped, but whether or not this is so, the appearance of danger was of such nature that the jury were entitled to find that his overmastering fear was excusable and a natural consequence of the negligence in approaching and passing the wagon at high speed. The demurrer to the evidence was properly overruled as to the defendant receivers.

The complaint that error was committed by the court permitting a witness for plaintiff to state, over the objection of defendants, that the car "was running awfully fast" would be well grounded if the error had

not been sufficiently counteracted to strip it of all prejudicial influence. The subsequent interrogation of the witness brought out the facts that he was "familiar with the rate of speed of those cars in Kansas City and of other cars," that he was able "to make a fair estimate of the rate of speed at which a car is going" and that "at the time this man in front of me stepped off, that car was going twenty to twenty-five miles an hour." Thus his conclusion that the car was going "awfully fast" is shown to mean that its speed was at the rate of twenty to twenty-five miles per hour and is the only conclusion reasonable minds could draw from that fact considered in the light of the other disclosed circumstances of the situation.

The objection to the testimony relating to measurements showing the position of the car track in the street that were made by a witness on the day of the trial is not well taken. The court ruled that the witness might "testify about the measurements and show later whether there has been any change there or not." There was no claim or suggestion at the trial and there is none now, of any change in the location of the car track and the trial court's attention was not called to the omission of plaintiff which, no doubt, was inadvertent, to show affirmatively that the condition of the street had not been altered between the dates of the injury and of the trial. It devolves on the party claiming error to show that he was prejudiced in some substantial right by such error. We have no right to reverse a judgment on account of non-prejudicial errors, such as the one under consideration appears to have been.

Opinion evidence elicited from physicians, introduced by plaintiff, is attacked by defendant on the ground that it failed to observe the proper distinction between opinion and conclusion as defined by the Supreme Court in Taylor v. Railroad, 185 Mo. 239; Roscoe v. Railway, 202 Mo. 577, and State v. Hyde, 234 Mo.

l. c. 251, et seq. A fairly illustrative example of the evidence criticized appears in the following portion of the testimony of one of the expert witnesses:

"Q. Assuming . . . that he had . . . a violent blow upon the head and about the face on the 19th day of September, 1912, that he has recovered sufficiently to be on his feet and about his duties, he still suffers from headaches and lapse of memory, a condition which did not exist prior to that accident on the 19th of September, 1912, what would you say was the probable cause—the thing which probably produced these headaches and this loss of memory? . . . State to the jury whether or not these headaches, this loss of memory, might or could result from a blow on the head on the 19th of September, 1912? A. Yes, sir."

The witness was not asked to state a conclusion that the collision of plaintiff with the wagon did cause the headaches and loss of memory but to state his opinion as an expert, upon the subject of whether or not the described condition "might or could result from a blow on the head" received on the date of the collision. The question and answer were within the strict letter as well as the spirit of the rule as defined and applied in the cited cases.

In our discussion of the demurrer to the evidence we have answered the objections urged against rulings on instructions. There is no merit in the point of an excessive verdict.

The judgment is reversed as to the Metropolitan Street Railway Company and affirmed as to the receivers.

All concur.