CALLIE TAVIS v. BENJAMIN F. BUSH, Receiver of
   MISSOURI PACIFIC RAILWAY COMPANY, Ap-
   pellant.

Division Two, January 6, 1920.

1. **NEGLIGENCE: Humanitarian Rule: Degree of Care.** The degree
   of care imposed under the humanitarian rule is always commen-
   surate with the degree of danger. The engineer's field of obser-
   vation to avoid danger is as wide as the field which the danger
   he creates covers.

2. ————: ————: **Failure to Warn Traveler.** Where the fireman,
   when his engine was 500 feet from the crossing, saw deceased ap-
   proaching in a large motor truck at a speed of five or six miles
   an hour, and testifies that he knew deceased was oblivious of
   the fact that the train was coming. and failed to warn him with
   the blast of the whistle, but proceeded ahead until the engine
   struck the truck, the plaintiff is entitled to recover under the
   humanitarian doctrine.

3. ————: **Instruction: Measure of Compensatory Damages: Negligent
   Acts.** In an action brought by a widow under Section 5425,
   Revised Statutes 1909, in which she seeks to recover $10,000 for
   the negligent killing of her husband, and in which her petition
   charges simple negligence, an instruction which tells the jury
   that, in estimating her pecuniary loss, they "may take into con-
   sideration the facts constituting negligence on the part of defend-
   ant causing his death," is erroneous, and not harmless. The cir-
   cumstances of his killing, or the negligent acts of defendant, are
   not elements of damages, or of her pecuniary loss. [Following
   State ex rel. Dunham v. Ellison, 278 Mo. 649.]

Appeal from Jackson Circuit Court.—*Hon. William O.
                  Thomas,* Judge.

REVERSED AND REMANDED.

   *Edward J. White* and *Thomas Hackney* for appel-
lant.

   (1) The court erred in overruling defendant's de-
murrer to the evidence interposed at the close of plain-

tiff's evidence and again renewed at the close of all the evidence. The testimony was insufficient to authorize the submission of the case to the jury under the humanitarian rule. Keele v. Railroad, 258 Mo. 79; Tannehill v. Railroad, 213 S. W. 818; McMiens v. United Rys. Co., 274 Mo. 331; Burge v. Railroad, 244 Mo. 102; Degonia v. Railroad, 224 Mo. 596; Pope v. Railroad, 242 Mo. 232; England v. Railroad, 180 S. W. 36; Armstrong v. Railroad, 203 S. W. 249; Guyer v. Railroad, 174 Mo. 351; Schmidt v. Railroad, 191 Mo. 235; McGee v. Railroad, 214 Mo. 543; Porter v. Railroad, 199 Mo. 82. (2) It was the duty of the deceased in driving the truck on the public road as he approached the railroad crossing to "use the highest degree of care that a very careful person would use under like or similar circumstances" to prevent the collision with defendant's train. Par. 9, Sec. 12, Laws 1911, p. 330. He owed this duty to defendant as well as to others on the highway. Threadgill v. United Rys. Co., 279 Mo. 66, 214 S. W. 161. The engineer and fireman had the right to presume that the deceased in approaching the crossing at a confessedly slow speed variously estimated at from 2 to 8 miles per hour, with the train in plain view, had both seen and heard the train. Keele v. Railroad, 258 Mo. 79; England v. Railroad, 180 S. W. 36. (3) The court erred in giving Instruction No. 5 at the plaintiff's instance. By this instruction the jury were told that in determining plaintiff's damages they could take into consideration the pecuniary loss occasioned to plaintiff by the death of her husband, if any; also "and you may also take into consideration the facts (if any) constituting negligence (if any) on the part of the defendant causing the death (if you so find)." This action was for compensatory damages only, being brought under Sec. 5425, R. S. 1909. No punitive damages were asked. In such case it is error to instruct the jury that in assessing the damages they may take into consideration the facts constituting negligence

causing death. State ex rel. Dunham v. Ellison, 213 S. W. 459.

*Hogsett & Boyle* for respondent.

(1) Deceased did not have ample warning of the approach of the train. Stotler v. Railroad, 200 Mo. 137; Murray v. Transit Co., 176 Mo. 188; Dutcher v. Railroad, 241 Mo. 141. See also Muller v. Harvey, 204 S. W. 929; Advance Transfer Co. v. Railway Co., 195 S. W. 567; Doyle v. Railway Co., 185 S. W. 1175; Buckrey-Ellis v. Railroad, 158 Mo. App. 499; Underwood v. Railway, 190 Mo. App. 407. (2) This court has laid down the rule that even where the engine bell is ringing, but where such warning by the bell is apparently ineffective, there is a duty on the part of the engineer to sound the whistle. Rollinson v. Railroad, 262 Mo. 538; Dutcher v. Railroad, 241 Mo. 137; Eppstein v. Railroad, 197 Mo. 735; Reyburn v. Railroad, 187 Mo. 573. (3) The claimed error in Instruction 5 on the measure of damage was harmless. The McGowan Case, 109 Mo. 518, is directly in point and in principle is exactly like the case at bar. Where a verdict is manifestly for the right party, and the amount thereof is manifestly and indisputably reasonable, it would be "intolerable" (as this court said in the Shinn Case, 248 Mo. 180-183) to reverse the judgment for an error in an instruction on the measure of damages, which obviously has had no prejudicial effect whatever in increasing the amount of the verdict.

MOZLEY, C.—This is an action for damages brought by plaintiff to the Jackson County Circuit Court, and was tried therein at the regular May term, 1917, of said court. The trial resulted in a verdict for plaintiff, upon which judgment was duly rendered by the court. Within the statutory period appellant duly filed its motions for new trial, and to arrest the judgment, and, on the 30th day of June, 1917, the same being

25—280 Mo.

one of the judicial days of said term, the court over-ruled each of said motions; exceptions to this action of the court were taken and, thereupon, the case was duly appealed to this court.

This is a crossing case and the facts material and necessary to an understanding of them and of the issues involved are substantially as follows:

Respondent is the widow (and during his lifetime the wife) of John W. Tavis. Appellant owned and was operating a railroad which extends at the place in question a little north of east and a little south of west.

The accident happened on a bright sunshiny day at an unincorporated village named Dodson at the crossing of the public road over the railroad. The public road was smooth-surfaced, with a slight elevation as the track was approached, and crossed the same at grade and crossed the track substantially at right angles from east to west. There was an automatic-signal ball near the crossing and a few feet east of the track. Barrett's store and Hurley's Lumber Company buildings are situated on opposite sides of the track. Barrett's store building at its nearest point is 80 or 90 feet from said crossing. On the day of the accident deceased was driving a large motor truck and engaged in delivering bread for a Kansas City concern, and had stopped at said store, where he transacted some business, and then got into his truck and started toward the crossing at an estimated speed of three miles an hour. At the same time appellant was operating a train which was approaching the same crossing at a speed of twenty miles an hour. When deceased had traveled approximately one-half the distance between Barrett's store and the crossing, about 40 or 45 feet, he slowed his truck, without stopping, to allow a frightened team hitched to a wagon to pass and to which his attention was apparently directed. On the opposite side of the crossing was a disabled motor truck at the edge of the road deceased was traveling, which parties were trying to extricate from its predicament and apparently deceased's atten-

tion was directed to this after passing the wagon and
team. All of the witnesses agree that when deceased
was 80 or 90 feet from the crossing the on-coming train
was from 400 to 600 feet distant from said crossing, and
that there was nothing that interfered with the vision
of either party. The fireman, E. E. Hart, testified as
follows:

"Q. Did you have your eye on the lookout on the
left hand side of the engine from that time until you
got up to the road crossing? A. Yes, sir.

"Q. I wish you would tell the jury what you saw
up there at the road crossing and when you first saw the
automobile and how it was moving up to the time of
the collision. Just tell them about it? A. When we
got around the curve there that store was in my line
of vision, when we got around the curve there the store
would be in my line of vision, *and I seen an auto truck;*
it looked to me like it just started, moving very slowly,
and it moved along *slowly, I should say five or six miles
an hour, about that, up until it got within fifteen feet or
such a matter of the side track that crosses Prospect
Avenue, and all of that time I supposed the auto-truck
seen the train and was going to stop, but when he got
within about fifteen feet of that track his speed increased
and I realized then that he had not seen us or was trying
to beat us across, and I yelled to the engineer, 'we are
going to hit that fellow,' and he applied the brakes in
emergency* and by that we hit him."

On cross-examination he testified as follows:

"Q. When did you first see this man? A. When
we commenced to swing around the curve; when the er
gine swung around so the boiler would throw him ir
my line of vision on the curve.

"Q. Now, at that time how far was he from the
track? A. He was just leaving the store, he was about
79 feet from the crossing.

"Q. You saw this man approaching the track 79
feet from the track? A. Yes, sir.

"Q. At that time you were on the curve? A. Yes, sir.

"Q. He came forward slowly? A. Yes, sir.

"Q. You say the truck was going slowly? A. Yes, sir.

"Q. And that it reached a point about fifteen feet from the passing track and then practically stopped? A. Yes, sir.

"Q. How far is the passing track from the main track? A. Fourteen feet, I believe.

Q. How wide is the track? A. Four feet and eight inches.

"Q. That makes eighteen feet and eight inches. A. Yes, sir.

"Q. And the man was still fifteen feet beyond that? A. Yes, sir.

"Q. That makes about twenty-nine and one-half feet that this man was from the track when you saw him start forward? A. Yes, sir.

"Q. *At that time you knew he did not hear*— A. (interrupting) *Yes, sir.*

"Q. *You knew he didn't know your train was coming, isn't that true?* A. *That is true.*

"Q. *Did you then sound the whistle to notify him, when you knew he didn't know you were coming?* A. *No, sir.*"

This witness who testified, supra, that when the truck started up it did so at a speed of five or six miles an hour, also testified that the train was running twenty-five or thirty miles an hour.

The case was submitted to the jury on the humanitarian doctrine alone.

I. It is strongly insisted by appellant that the facts of the record fall far short of making out a prima-facie case under the humanitarian rule, and that the court **Failure to Warn.** erred in not giving its peremptory instruction in the nature of a demurrer directing the jury to return a verdict for defendant.

Under this assignment, the question confronting us is, does the record contain substantial testimony tending to show that the operatives of the train were derelict in not using that degree of care the circumstances imposed upon them? If so the assignment cannot be disposed of as a law question, but should be submitted to the jury as a question of fact.

"The degree of care imposed under the humanitarian rule is always commensurate with the degree of danger. The engineer's field of observation to avoid danger is as wide as the field which the danger he creates covers." [Holmes v. Missouri Pacific Railway, 207 Mo. 149.]

This is not a case where the traveler stepped suddenly on the track in front of the train so closely that his injury could not be avoided in the exercise of ordinary care by the operatives of the train, or one where the injured party was negligently driving a vehicle on the track and there was no evidence that he could have been seen in time to avoid the injury, nor is it one where there is nothing to indicate obliviousness to danger.

But it is one in which all of the physical facts as well as the testimony of appellant's fireman who, when he was 500 feet distant from the crossing, saw deceased approaching it at a speed of five 'or six miles an hour and admittedly knew that he was oblivious of the fact that the train was coming and of his danger, and failed to warn him with a blast of the whistle and thereby save his life.

If the humanitarian rule will not apply to the facts of this case then it is a rule without value and ought to be discarded.

We think the facts disclosed by the record, in the instant case, bring it fairly within the rulings of this court in the cases of Maginnis v. Railroad, 268 Mo. l. c. 678; Lyons v. Metropolitan St. Ry. Co., 253 Mo. 143-152; Murrell v. Kansas City, St. L. & C. R. Co., 213 S. W. 964; Eppstein v. Mo. Pac. Ry. Co., 197 Mo. 720, l. c. 735; Waddell v. Railroad, 213 Mo. l. c. 16. There

are many other cases ruling likewise which we deem unnecessary to cite.

In the Eppstein case, supra, at page 735, it was said: "Appellant's servants with plenty of space and plenty of time to see, with no obstructions in the way of seeing, warned by his preoccupied attitude and conduct of the fact that he was oblivious to their approach, owed him, we think, the simple and easy duty to tell him they at once purposed occupying the identical spot he was on with their ponderous engine. This is not requiring anything extraordinary at their hands— a twist of the wrist would have done it presumably." In the Waddell case, at pages 16-17, the court laid down this rule, viz.: " 'When a defendant sees, or by the exercise of ordinary care can see, the peril of the plaintiff caused by the latter's contributory negligence, in time to avoid injuring him, then the plaintiff can recover, notwithstanding his contributory negligence. This is now the accepted and settled exception to the general rule that plaintiff's contributory negligence bars a recovery.' " (Italics ours.)

The facts of the case in hand are as strong, if not stronger, than those of the cases just quoted from and point unerringly to the negligence of the train operative from which the death of John W. Tavis resulted.

We think the court did not err in submitting the case to the jury and rule the point against appellant.

II. Appellant makes the point that Instruction No. 5 given by the court on behalf of plaintiff is erroneous to the extent of affecting its rights prejudicially and, for this reason, the case ought to be reversed and remanded. The instruction is on the measure of damages and reads as follows:

"The court instructs the jury that if you find the issues for the plaintiff you shall allow her a sum not less than two thousand dollars and not more than ten thousand dollars, in the discretion of the jury; and in determining the amount you will allow her, you may take into considera-

Measure of Damages.

tion the pecuniary loss occasioned to the plaintiff by the
death of her husband (if any) *and you may also take
into consideration the facts (if any) constituting negli-
gence (if any) on the part of the defendant causing the
death (if you so find)*, and in considering the subject of
her pecuniary loss you may consider what would have
been the value of her support from her husband from
the time of his death during the time he probably would
have lived and supported her, and you may also con-
sider the additional burden, if any falls upon her, for
the support of her minor child by reason of his death.''
(The italics are ours).

The action was brought under Section 5425, Revised
Statutes 1909, and the petition so far as necessary to
quote charges the following acts of negligence against
appellant:  (a)  in that appellant's agents and servants
negligently operated said train at a negligent rate of
speed under circumstances then and there existing; (b)
negligently failed to ring the bell placed upon the loco-
motive engine of such train at least eighty rods from
said crossing and negligently failed to keep said bell
ringing until the crossing was affected;   (c)  negligently
failed to sound the steam whistle attached to said en-
gine 80 rods from said crossing and negligently failed
to sound said whistle at intervals until said crossing was
affected;   (d)  negligently failed to give said John W.
Tavis any warning of the approach of said train;   (e)
negligently permitted the automatic signal bell at said
crossing to become out of repair so that it would not
ring and give warning of the approach of the train, and
(f)  although defendant's employees in charge of and
operating said train saw, or by the exercise of ordinary
care upon their part should have seen, said John W.
Tavis approaching a position of peril, and in a position
of peril, in front of said train, and oblivious to his peril,
in time by the exercise of ordinary care on their part
to have sounded a warning, or stopped or slackened the
speed thereof and thereby have avoided the injury to
and resultant death of said Tavis, yet they negligently

did neither and on account thereof the collision, injury and death ensued. As above stated the case was submitted to the jury upon the humanitarian doctrine alone.

In a very recent case, State ex rel. Dunham v. Ellison, et al., Judges of Kansas City Court of Appeals, 278 Mo. 649, our Court in Banc had before it for decision the precise question under consideration upon an instruction the exact counterpart of the one under consideration. The opinion of the Court of Appeals was quashed on the ground that said instruction there given told the jury that the negligence of defendant might be considered for the purpose of enhancing the amount of damages the plaintiff was entitled to recover, and the court said: "By this instruction the jury was told that, in considering the amount of damages they would award plaintiff, the jury could consider two things: (1) The pecuniary loss occasioned to her by the death of her husband, and (2) the facts constituting negligence upon the part of defendants. The instruction clearly authorized the jury to consider both of these things in fixing the amount of the damages to plaintiff. . . . We do not think this is proper under this section [5425] of the statute, with the petition before us in this case, if indeed it would be proper in any case under such section of the statute. . . . The statute (Section 5425) does not contemplate a consideration of the character of the negligent acts to either increase or diminish plaintiff's compensatory damages. Any kind of negligence shown authorized the recovery of the penalty of $2000. We have no degrees of negligence in Missouri, so far as the right to recover for negligence is concerned. We are confining our remarks to the case in hand, and to the statute under which it is brought. . . . The principle is common to cases under both statutes. That common principle is that, under a petition charging simple negligence, a consideration of the negligent acts themselves for the purpose of enhancing compensatory damages is improper. . . . The instruction is erroneous, in that it permits the jury to consider the circum-

stances of the killing in aggravation of the widow's compensatory damages."

The instruction under discussion is unmistakably stamped with the same erroneous character as the instruction in the case just quoted from, since, as above stated, there is no difference in the wording of the two.

We cannot agree with the last-resort contention of learned counsel for respondent that if said instruction is erroneous, it is, nevertheless, harmless and appellant has no right to complain because not hurt by it.

What has been said above sufficiently shows it was prejudicial to appellant's defense in the case.

On account of the error pointed out, the case will have to be reversed and remanded for a new trial. It is so ordered.

*White, C.,* concurs; *Railey, C.,* not sitting.

PER CURIAM:—The foregoing opinion of Mozley, C., is hereby adopted as the opinion of the court. All of the judges concur.