NORA SIMPSON et al., Administrators of Estate of CHARLES SAMPSON, v. ROLLA WELLS, Receiver of UNITED RAILWAYS COMPANY, Appellant.

### Division Two, February 18, 1922.

1. **DEMURRER: To Plaintiff's Case: Waiver.** Defendant waives his right to be heard upon his demurrer to plaintiff's evidence if, after said demurrer is overruled, he puts in his own evidence. In such circumstances it is the duty of the court to determine the merits of the controversy under all the competent evidence in the case.

2. **EVIDENCE: Death Certificate.** A certificate of the deputy coroner that the plaintiffs' intestate died at a certain time in the city hospital from "shock and injuries, traumatic amputation of both feet, due to street car," is competent evidence tending to show that said intestate died of injuries and shock received in the collision of defendant's street car with an automobile truck in which he was attempting to cross a street, under Section 5802, Revised Statutes 1919, requiring the State Board of Health to maintain a system of registration of births and deaths and specifying what the certificate shall contain, and under Section 5816 requiring the State Registrar to furnish, upon application, a certified copy of the record of any birth or death, and making such copy prima-facie evidence in all courts.

3. ———: ———: **Section 5803. Inapplicable.** Where there is (a) nothing in the face of the deputy coroner's death certificate indicating that the matters covered thereby had ever been referred to the coroner for his investigation and certification, and (b) the evidence and certificate show that after a collision with a street car deceased died at the city hospital from shock and injuries while both feet were being amputated, it will not be held that the certificate was made under Section 5803, Revised Statutes 1919, providing that "in case of death occurring without medical attend-

ance, if the circumstances of the case render it probable that the death was caused by unlawful or suspicious means, the registrar shall then refer the case to the coroner for his investigation and certification." Said facts do not bring the case within the purview of that section.

4. ———: ———: **Meaning of Two Sections.** Where a certificate from either the coroner or attending physician is required to be filed with the State Registrar, Sections 5802, 5803 and 5816, Revised Statutes 1919, mean that all matters required by law to be stated in such certificate are to be taken as prima-facie evidence in all courts.

5. ———: ———: **Cause of Death: Sufficient Other Facts.** Leaving out of view the certificate of the coroner that "the cause of death was shock and injuries, traumatic amputation of both feet, due to street car," proof that deceased was riding on an automobile truck; that it was struck by a street car; that deceased had been in good health up to the time of the accident; that immediately after the collision he was found lying in the street; that the two front wheels of the street car had passed over and crushed his feet; that he was taken to the hospital and died within a week, is sufficient evidence from which the jury might properly infer that his death resulted from the shock and injuries received in the collision.

6. ———: ———: **Conclusion of Coroner.** The statute does not require that the coroner's certificate detail the facts upon which he bases his conclusion that the cause of deceased's death was shock and injuries received in a street-car collision, nor is the certificate inadmissible as a mere conclusion of the maker. A coroner's certificate that the cause of death was "shock and injuries, traumatic amputation of both feet, due to street car," in view of the statute, is not inadmissible as a mere conclusion.

    *Held* by HIGBEE, P. J., that the words "due to street car" are a mere conclusion, and not a statement of fact within the meaning of the statute.

7. ———: ———: **No Cross-Examination: Invasion of Province of Jury.** The Legislature has the right to determine what facts shall be stated in a death certificate and to make such matters prima-facie evidence, and the certificate is not therefore inadmissible on the theory that it invades the province of the jury and cuts off the right of cross-examination.

8. **NEGLIGENCE: Insufficient Allegations: No Demurrer: No Motion in Arrest.** A complaint on appeal that the petition fails to state a cause of action under the humanitarian doctrine, in that (a) it does not allege a failure of the motorman to use ordinary care

to stop the street car while the automobile truck was passing in front of it and (b) does not allege that either the driver of the truck or deceased, a passenger thereon, was oblivious of the peril, or that the motorman saw, or by the exercise of ordinary care could have seen, their peril, cannot be considered if the petition was not attacked by demurrer, or a motion in arrest of judgment, or in any other manner, at the trial.

9. ————: **Of Driver of Automobile: Imputed to Passenger.** The negligence of the driver of an automobile truck in attempting to cross a street in front of a moving street car cannot be imputed to a passenger on the truck.

10. ————: **Instruction: Obliviousness.** Where the foreman and driver of the motor truck testified that the motorman of the street car, after it had stopped, motioned the driver to go forward, and there is other substantial evidence that the motorman had good reason to believe or did believe that the driver of the truck intended to drive across the track in front of the street car without stopping, the question of the obliviousness of deceased, a passenger on the truck, has no place in the case, and it is not error to give plaintiff's instruction telling the jury that "if the motorman, after he saw, or by the exercise of ordinary care should have seen, the danger of running his street car into said truck, he failed to use ordinary care to stop said car," etc. In the face of such evidence, it cannot be justly claimed that no duty rested upon the motorman to commence stopping his car until he saw or should have seen that deceased was oblivious of the peril. And especially was such instruction not error, where defendant asked and was given an instruction telling the jury that if the motorman exercised ordinary care in moving his car, plaintiff could not recover.

11. ————: **Measure of Damages: Acceptance of Trial Theory.** Where deceased, over the age of twenty-one years, left surviving him no widow or children, but a mother and a widowed sister, to whose support he had regularly contributed, in the suit by his administrators an instruction telling the jury that "if you find for plaintiff your verdict will be in the sum of $2,000, unless you find from the evidence that the mother and sister of deceased suffered by reason of his death a necessary pecuniary injury in excess of $2,000; in which event your verdict will be for the amount of said necessary injury; in no event, however, to exceed $10,000," was within the purview of Section 4217, Revised Statutes 1919, as construed in Boyd v. Mo. Pac. Ry. Co., 249 Mo. l. c. 120, and other cases; and defendant, by its instructions asked and given, having adopted the plaintiff's theory of the measure of damages as expressed in said instruction, cannot be heard to complain that

said statute is wholly penal and said instruction out of harmony therewith.

12. ———: ———: ———: **Different Theory on Appeal.** A defendant who at the trial voluntarily adopted plaintiff's theory of the law concerning the measure of damages will not be permitted to assert on appeal that the action of the trial court in disposing of the case on such theory was error. Defendant cannot on his appeal tender an issue which he in no wise tendered in the trial court, and which is in direct conflict with the trial theory voluntarily accepted by him.

13. ———: **Instruction: Omitting Material Facts.** An instruction directing the jury to return a verdict for defendant is fatally defective if it omits material issues in the case and all reference to other facts shown in evidence which if believed would establish defendant's negligence.

Appeal from St. Louis City Circuit Court.—*Hon. John W. Calhoun,* Judge.

AFFIRMED.

*T. E. Francis, Charles W. Bates* and *Albert D. Nortoni* for appellant.

(1) The court should have given appellant's instruction in the nature of a demurrer to the evidence requested at the close of plaintiffs' case and again at the conclusion of all of the evidence. (a) There is no evidence that the act of defendant caused the death of plaintiffs' decedent. The evidence must show the necessary connection with the wrongful act complained of, as the proximate cause of such death, and not leave this essential connection to mere speculation or conjecture. Warner v. Suburban Ry. Co., 178 Mo. 134; Steamship Co. v. Clare, 126 U. S. 45; Martinez v. Bernard, 16 La. 368, 55 L. R. A. 671, 87 Am. St. 306; Randall v. New Orleans Ry. Co., 45 La. 778; McQuade v. Met. St. Ry. Co., 82 N. Y. 720. (b) The statute (Sec. 4217, R. S. 1919), creates and gives a cause of action for death when caused by wrongful act which did not exist at common law. The statute is not only penal, but highly

penal in character, as its spirit is punishment, in that it declares the offender ''shall forfeit and pay as a penalty.'' It ·is, therefore, to be strictly construed and strictly pursued in so far as the proceeding to recover the penalty is concerned. Grier v. Ry. Co., 286 Mo. 523; Lackey v. United Rys. Co., 231 S. W. 956; Casey v. Transit Co., 205 Mo. 721, 116 Mo. App. 235. (c) This is not a statute which merely accumulates or enhances damages on a cause of action which existed at common law. On the contrary, it is penal or as punishment for the wrongful act, and creates a new cause of action for such penalty as punishment. Casey v. St. Louis Transit Co., 205 Mo. 721, 116 Mo. App. 250; Grier v. Ry., 286 Mo. 523. (d) The statute finds its support solely in the police power of the State, as do our laws enacted with a view to restraining and punishing crimes for the public good. In every aspect, save that of awarding the penalty assessed by way of punishment to a private party rather than to the State, this statute is criminal in character. Lackey v. U. Rys. Co., 231 S. W. 962. (e) The certificate of death introduced in evidence could not supply the casual connection, because it was purely *ex parte* hearsay, and defendant was afforded no opportunity for cross-examination as to the very crux of the case. It, moreover, stated no fact, but only a conclusion of the coroner. When one is on trial as for an offense with a view to assessing a fine, forfeiture or penalty as punishment for a wrongful act denounced and prescribed in virtue of the police power of the State, he is, at least, entitled to the right of cross-examination. By the analogies of the law, the denial of this right is both obnoxious and forbidden. State v. Berkley, 92 Mo. 41; State v. Dyke, 96 Mo. 298; Secs. 22 and 30, Art II, Mo. Constitution. (2) It was manifestly prejudicial error on the part of the court to permit the introduction and reading in evidence of the certificate of death, over our objections and exceptions, to show the cause of death. (a) It is not a certificate of fact as contemplated by the statute, but rather one of a conclusion on the part of the coroner. The statute, (Sec. 5816, R. S. 1919)

22 Mo.—20

under which the court admitted it, says the certificate
"shall be prima-facie evidence in all courts and places
of the facts therein stated." The statement in the cer-
tificate of the cause of death is as follows: "Shock and
and injuries, traumatic amputation of both feet due to
street car." Such is not the statement of fact, but, on
the contrary, only the conclusion of the coroner, and,
therefore, incompetent in any view. Smith v. Supreme
Council, 207 S. W. 874. This certificate, on its face shows
it was not made by an attending physician, under Section
5802, but was made as the conclusion of the coroner's in-
quest, under Section 5803, as pointed out in Smith v.
Supreme Council, 207 S. W. 874. (b) The cause of
death as determined by the coroner's inquest may not
be shown in any case where the cause of death is the
fact in issue by the conclusion of the coroner or the
conclusion of the coroner's jury as appearing in the
verdict, for the reason such is a conclusion reached on
*ex parte* examination, in the absence of the adverse
party, and without cross-examination. It does not arise
to the dignity of a fact. Quealtham v. Modern Woodmen,
148 Mo. 33; Aetna Life Ins. Co. v. Kaiser, 174 S. W.
(Ky.) 203; Daugherty v. Pac. Ins. Co., 154 Pa. 358;
Arcanum v. Brashears, 89 Md. 624; Mutual Ins. Co. v.
Stibbe, 46 Md. 302; Fidelity Assn. v. Ficklin, 74 Md.
172; Cook v. Ins. Co., 84 Mich. 12, 47 N. W. 568; Travelers
Ins. Co. v. Nicholas, 88 Md. 470; Goldsmith v. Mutual
Ins. Co., 102 N. Y. 486; Buffalo Ins. Co. v. Knights
Templar, 126 N. Y. 450, 22 Am. St. 389; Louis v. Conn.
Ins. Co., 58 App. Div. (N. Y.) 137; Ins. Co., v. Schmidt,
40 Ohio St. 112. (c) Even medical men, as experts,
cannot state the cause of death in those cases where the
cause of death is the issuable fact in the case, because
to do so invades the province of the jury. In other
words, such question must be ruled out as improper, be-
cause, as this court says in De Maet v. Fidelity Storage
Co., 231 Mo. 615, "It calls upon the witness to determine
the very issue which is to be left to the jury." Treat
v. Merchants Life Assn., 198 Ill. 431; Bentz v. North-

western Aid Assn. 40 Minn. 202, 2 L. R. A. 784; Ill.
Cent. Railroad v. Smith, 208 Ill. 608; State v. Rams-
berger, 74 Iowa, 196; People v. Hare, 57 Mich. 505;
Cannon v. People, 141 Ill. 270; Roscoe v. Met. St. Ry.
Co. 202 Mo. 576; Taylor v. Grand Ave. Ry. Co., 185 Mo.
239; Spaulding v. Edina, 122 Mo. App. 69; Baehr v.
Union Cas. Co., 133 Mo. App. 541. (d) The words in
the death certificate, ''due to street car,'' were not even
competent for a doctor to speak, were he on the stand and
testified in the case, and they are especially obnoxious in
this *ex parte* statement. Glasgow v. Met. St. Ry. Co., 191
Mo. 360; Baehr v. Union Cas. Co., 133 Mo. 541. (c) Neith-
er may the Legislature make, nor does it purport by Sec-
tion 5816 to make, mere conclusions which may be gather-
ed or found from inferences in the absence of the ad-
verse party, facts to be utilized in evidence. Schmidt v.
Royal Council, 207 S. W. 877. In other words, although
the Legislature may possess the power to declare cer-
tain facts shall be prima-facie evidence, we insist it is
without power to make that which is neither facts nor
evidence to be evidence, for to do so would impinge
upon the rights of the citizen to have and enjoy due
process of law under the Constitution of Missouri and
of the United States. (3) By instructions requested
plaintiffs abandoned all assignments of negligence in the
petition save that relating to stopping the street car
after danger appeared; that is, the specification pur-
porting to charge a breach of duty under the humani-
tarian or last-chance doctrine. Keele v. Sante Fe, 258
Mo. 62. (a) The petition is insufficient and wholly fails
to state a cause of action as for a breach of duty under
the humanitarian doctrine, in that it fails to state that
either the decedent or the chauffeur driving the truck
on which he was riding was oblivious of the peril and that
the motorman on the street car saw, or by the exercise
of ordinary care might have seen, that decedent or
the driver of the truck were oblivious of such peril and
there was no duty to commence to stop the street car
until then, for the motorman had the right to assume

they would stop and not drive into the danger zone. Knapp v. Dunham, 195 S. W. 1062; Rubick v. Sandler, 219 S. W. 406; Lackey v. U. Rys. Co., 231 S. W. 962; Marshall v. K. C. Rys. Co., 205 S. W. 971; Stark v. Bingham, 223 S. W. 946; Keele v. Santa Fe Ry. Co., 258 Mo. 79; Schmidt v. Mo. Pac., 191 Mo. 234. (4) Plaintiffs' instruction, on the measure of damages, is erroneous, misleading, misdirected and highly prejudicial, in that it emphasizes pecuniary loss and compensatory damages. This instruction is not authorized by the statute, for the statute is penal and it is all punishment, the penalty to be fixed in the discretion of the jury as punishment. Although as a mere incident there may result in some cases compensation for pecuniary loss, the statute is nevertheless penal as for punishment and is not designed to compensate pecuniary loss. The whole sum provided for is punishment for the very simple reason that the Legislature within its competency has said in plain English that the offender "shall forfeit and pay as a penalty the sum of not less than $2,000 and not exceeding $10,000, in the discretion of the jury." Sec. 4217, R. S. 1919; Grier v. Ry. Co., 228 S. W. 459; Young v. Iron Mountain Ry. Co., 227 Mo. 307; Casey v. Transit Co., 116 Mo. App. 235, 205 Mo. 701. (a) This instruction does more than merely authorize pecuniary loss to be considered as an element of damage, and constitutes flagrant misdirection, in that it pointedly directs that in event the jury should find decedent's mother and sister suffered pecuniary loss in excess of $2,000, "your verdict will be for the amount of said pecuniary injury, but not to exceed $10,000." Such is not the proper element of damages, for pecuniary loss is but incidental in any case under this statute, and there must be set over against this and considered and weighed therewith the facts constituting the negligence, which, on all the evidence in the record and on the theory that plaintiffs voluntarily elected to go to the jury, certainly cannot be said to be aggravating or gross. Grier v. Ry. Co., 286 Mo. 523. (b) Although

in the case of the widow, as in Lackey v. United Rys. 231 S. W. 956, or the minor children suing on account of the death of the husband or father, there may be an element of pecuniary loss for consideration, this is certainly not true when the administrator sues, as here, for the very sufficient reason that the statute in plain English transmits the penalty recovered to next of kin in equal parts. When the administrator recovers under this statute, he does not recover as administrator of the estate, for if he did so, then the fund in the estate would be liable to payment of the debts of decedent. Therefore, in order to protect the penalty recovered by the administrator to the use of the statutory beneficiaries, such administrator recovers as trustee for them, and not as administrator, at all. Kirk v. Wabash Ry. Co., 265 Mo. 341; Troll v. Laclede Gas Light Co., 182 Mo. App. 600.

*Sears Lehmann* for respondents; *Frank H. Nottbusch* of counsel.

(1) The death certificate is an official public record required by law to be kept. In expressly making a death certificate admissible in evidence the statutes are merely declaratory of the general universal rules of evidence as they have always existed. (a) It is an official record required by law to be kept. Sec. 5802, R. S. 1919. (b) As such it is admissible in evidence to prove the facts therein stated. R. S. 1919, sec. 5816; 22 C. J. 791; 3 Wigmore, Ev., sec. 1630; Ohmeyer v. Supreme Circle, 91 Mo. App. 189; Levels v. Railway, 196 Mo. 606; Gurno v. Janis, 6 Mo. 330; Gentry v. Field, 143 Mo. 399; Finer v. Nichols, 122 Mo. App. 497; State ex rel. v. Heffernan, 243 Mo. 442. (c) While statutes giving a right of action for death by wrongful act may be penal and subject to strict construction, the action they create is a civil action and the trial thereof is not a criminal trial. The rules of evidence and procedure are those of a civil, not a criminal trial. (3) Both parties at the trial proceeded

on the theory the statute was compensatory beyond $2,000. Appellant did not object to the evidence offered on this theory and in eight requested instructions adopted this theory. At no time did appellant even hint that it claimed the statute all penal. Error, if error there was, on the measure of damages cannot be claimed by appellant. Bettes v. Magoon, 85 Mo. 580; Jennings v. Railway, 99 Mo. 394; Hudson v. Railway, 101 Mo. 13; Bank v. Cushman, 66 Mo. App. 102; Thorpe v. Ry. Co., 89 Mo. 650; Hall v. Water Co., 48 Mo. App. 356; Harper v. Morse, 114 Mo. 317; Olferman v. Railway, 125 Mo. 408; Zielman v. Harris, 129 Mo. App. 189; Johnson v. Traction Co., 176 Mo. App. 174; Potter v. St. Ry., 142 Mo. App. 220; Adams v. Barber, 157 Mo. App. 370. (b) Furthermore as the compensatory theory is more favorable to appellant than the penal theory, this error, if it could be claimed, was harmless.

*T. E. Francis, Charles W. Bates* and *Albert D. Nortoni* for appellant, in reply.

(1) The instruction requested by plaintiffs and given by the court over defendant's exceptions, touching the measure of damages in this case, is not merely an instruction well enough in its general scope, but rather it is an affirmative and positive misdirection of the jury as to the element of damage for their consideration, that is, to compensate the mother and sister of decedent. The statute is purely penal. Grier v. Rys. Co., 228 S. W. 545; Midwest Trust Co. v. Davis, 223 S. W. 412. Such being true, the instruction is positively erroneous, in that it incorporates a false and vicious element of damages and directs the jury to ascertain the damages with respect to such false rule. (2) No one can doubt the general rule which obtains to the effect that a case is to be disposed of on appeal on the same theory on which it is tried, but the principle of estoppel invoked and utilized in such circumstances applies only in those cases where one party has either invited the error or voluntarily

joined with his adversary in marking out the course for the court to pursue at the trial. Such in nowise applies to the instant case, for here the plaintiffs alone laid their plans, marked their course and moved the court. It was for the defendant to defend as best it could. We had nothing to do with the theory of the case, for the case was the plaintiffs' case, and it was for us to defend as best we could. Such being the state of the case, the mere fact that defendant requested an instruction in combating plaintiffs' theory in nowise estops it from complaining on appeal. Car Mfg. Co. v. Hirsch Mill Co., 227 S. W. 75; Cochran v. Peoples' Ry. Co., 113 Mo. 366; Kenefick-Hammond Co. v. Fire Ins. Co., 205 Mo. 307.

RAILEY, C.—This case was commenced in the Circuit Court of the City of St. Louis, Missouri, on July 17, 1919. The petition alleges, and the evidence shows, that Charles Sampson, at the time of his death, on April 19, 1919, was a citizen of the above city; that plaintiff, Nora Simpson, was his sister, and that Wm. F. Sampson was his brother; that said plaintiffs duly qualified as administrators of the estate of said Charles Sampson; that the latter left surviving him no minor children and no widow; that he was, at the time of his death, a single man, over the age of twenty-one years; that, in addition to plaintiffs, decedent left surviving him, his mother, Mrs. John Hutton, a resident of the above city, who is married, and a sister, Mrs. Charles Rost, who is also married and a resident of Brooklyn, N. Y. It alleges that said Railways Company is a common carrier of passengers, was organized under the laws of Missouri, and was engaged in operating a street railroad in said city. The petition alleges, and the evidence shows, that on April 12, 1919, defendant, Rolla Wells, was appointed receiver of said Railways Company and qualified as such; that Charles Sampson was a passenger, riding on a truck operated by his employer, the St. Louis Poster Advertising Company; that on the above date, after said Wells had been appointed as receiver aforesaid, and while said truck was proceeding east on Biddle Street in said city and

crossing 6th Street therein, it was struck by a street electric car, operated by said defendant Wells, as receiver aforesaid; that said truck was almost across the street railroad track and the rear part of said truck was struck violently by said car; that said Sampson was seriously injured in the collision, and died on April 19, 1919. The petition alleges that said collision was directly caused by the negligence of defendant in the following respects: That the motorman of said car, after perceiving the danger of collision between said truck and street car, did not use ordinary care to stop said car in time to avoid said collision; that said motorman, after he perceived said truck was crossing said street in front of said car, or should have perceived the same in the exercise of ordinary care, negligently started said car from a stand-still and brought it into collision with said truck while the latter was crossing said street in front of said car; that while said truck was crossing the street aforesaid, and while the danger of collision was apparent to said motorman, the latter failed to use ordinary care to stop said car in time to avert said collision, when by the exercise of such care it could have been averted. The petition further avers that the death of said Charles Sampson was caused by the negligence of defendant and his servants, as above set out. The petition alleges, and the evidence shows, that said Charles Sampson regularly contributed to the support of his mother, Mrs. Hutton, in the sum of $15 per week; that he contributed to the support of his widowed sister, Nora Simpson, in the sum of $5 per week. The petition alleges, and the evidence shows, that deceased was forty-one years of age and in good health at the time he was killed. It concludes with a prayer for judgment in the sum of $10,000.

The case was tried on an amended answer, which admits that defendant Wells was receiver of said Railways Company. It also contains a general denial, and pleads the following defenses: That deceased was negligent in permitting himself to be driven into the street railroad track at a high, excessive and dangerous rate of

speed; that deceased was guilty of contributory negligent in permitting himself to be thus driven without looking or listening for approaching street cars thereon, when by looking he could have seen, and by listening could have heard, the approaching street car in time to have remained off said track and averted said collision; that said decedent, in addition to the negligence aforesaid, was guilty of contributory negligence, in jumping from a moving automobile upon a street railroad track directly in front of, and in close proximity to, a moving street car; that said deceased and one Joe Thomas were jointly negligent in causing and permitting said truck to suddenly go upon the said railroad track in front of said moving car, in such close proximity to said track, without looking or listening for the approach of the car, when if they had looked and listened they could have seen and heard said car in time to have avoided said collision.

The reply was a general denial of the new matter pleaded in said answer. The undisputed evidence discloses that Biddle Street runs east and west, and that it intersects 6th Street in said city, which runs north and south.

It was admitted at the trial by defendant that the accident complained of occurred at 1:40 p. m. on April 12, 1919, while defendant Wells was receiver of said road. At the date of said accident, there was a single car track on 6th Street and the cars passed over same in a northerly direction.

Plaintiff produced substantial evidence tending to show that the motorman, on the day of the accident, came to the corner of Biddle and 6th Streets with his car, and stopped the same at said corner; that said Charles Sampson was riding on the rear of said truck, and the latter approached 6th Street while said car was remaining stationary, as above indicated; that the truck continued toward 6th Street, traveling from ten to twelve miles per hour without any indications, upon the part of its occupants, that said truck would stop before passing over the track. Plaintiffs' evidence tends to show that

while said car was standing at the corner of Biddle and 6th Streets aforesaid, and while said truck was in the act of passing over the street-car track, the motorman of said car motioned to the chauffeur in charge of the truck, to pass on over the car track; that pursuant to said invitation to proceed, the chauffeur continued with said truck, which was about fourteen feet in length, and had nearly passed over the track when the rear of same was struck by said car, which had been permitted to start up from its standing position aforesaid, before the truck could clear said track. Plaintiffs' evidence tends to show that said Sampson was occuping a seat on the truck behind the chauffeur, and that he was subject to the orders and under the control of Joseph G. Howard, the foreman of said truck; that the street car struck the rear end of the truck, while the latter was headed due east, broke the chain, and headed the truck due south; that after the collision, Sampson was found lying with his feet under the car; that the front wheels of the latter had passed over his ankles and feet; that Charles Sampson was taken in an ambulance to the City Hospital of St. Louis, and died on the 19th of April, 1919. Plaintiffs introduced substantial evidence tending to show that the motorman was aware, when he started up his car to cross Biddle Street, that the truck, with its occupants, was not going to stop, but was proceeding across said street; that the motorman, after he saw the truck proceeding as above indicated, had ample time to have put his car under control and stopped the same before a collision occurred.

There was no testimony tending to show that Charles Sampson saw the car or knew of its approach prior to the time of collision. There was no direct evidence indicating that decedent came to his death from injuries received in said collision. The plaintiffs, however, offered in evidence, a certified copy of a death certificate, which tended to show that said Sampson died from the shock and injuries received in the collision aforesaid.

The testimony on the part of the defendant, as to what occurred immediately before and at the time of

the injury, is in conflict with the testimony offered by plaintiffs in respect to the same matters. Defendant's evidence tends to show that the motorman did not stop when he came to the corner of Biddle and 6th Streets, but that he slowed down his car, and then proceeded on his journey across Biddle Street until the collision occurred; that he did not give the chauffeur any signal to go over the track, and that after the truck came upon 6th Street, and was proceeding across the track, the motorman did everything in his power to stop his car and avoid said collision. The evidence of defendant also tends to show that after the car started up from the corner of 6th and Biddle Streets, the truck swerved to the north, and went around the car in passing over the track where the collision occurred. The answer alleges, and the testimony of defendant tends to show, that the chauffeur was driving the truck at a rapid rate of speed as it passed over the track in front of the moving car. The defendant's testimony also tends to show that Charles Sampson was not on the seat of the truck behind the chauffeur, but was standing on the running board of said truck between the wheels thereof.

The demurrer to the evidence was overruled at the conclusion of plaintiffs' case, and a similar demurrer was overruled at the conclusion of all the evidence offered at the trial.

The instructions given and refused, as well as the rulings of the court complained of, will be considered, as far as necessary, in the opinion.

The jury returned a verdict in favor of plaintiffs for $10,000 and judgment was entered thereon in due form. Defendant filed a motion for a new trial, which was overruled and the cause duly appealed by it to this court.

I. Under its first assignment of errors, appellant contends that its demurrer to plaintiffs' evidence should have been sustained.

After its demurrer was overruled, defendant put in its own evidence and, in so doing, waived its right to

be heard upon said demurrer, as it then became the **Demurrer.** duty of the court to determine the merits of the controversy under all the evidence in the case. [Burton v. Holman, 231 S. W. (Mo.) 1. c. 632; State v. Ray, 225 S. W. (Mo.) 1. c. 973; State v. Lippman, 222 S. W. (Mo.) 1. c. 439; State v. Belknap, 221 S. W. (Mo.) 1. c. 45; State v. Mann, 217 S. W. (Mo.) 1. c. 69; Lareau v. Lareau, 208 S. W. 1. c. 243; Riley v. O'Kelly, 250 Mo. 1. c. 660, 157 S. W. 566; Riggs v. Met. St. Ry. Co., 216 Mo. 1. c. 310, 115 S. W. 969; Frye v. St. L. I. M. & S. Ry. Co., 200 Mo. 377; Hilz v. Ry. Co., 101 Mo. 1. c. 42, 13 S. W. 946; McPherson v. Ry. Co., 97 Mo. 1. c. 255, 10 S. W. 846; Guenther v. Ry. Co., 95 Mo. 1. c. 289, 8 S. W. 371; Bowen v. Ry. Co., 95 Mo. 1. c. 275-6, 8 S. W. 230.]

II. It is insisted by appellant that the trial court committed error in overruling defendant's objection to the admission in evidence of the death cer- **Death Certificate.** tificate, marked as plaintiffs' exhibit "B." Said certificate is in the usual form, and is properly certified. It shows on its face that Charles Sampson died in the St. Louis City Hospital on April 19, 1919. Among other things, it contains the following:

"17. I hereby certify that death occurred on the date stated above, at 8:25 a. m. The cause of death was as follows: Shock and injuries, traumatic amputation of both feet, due to street car.

"WM. DEVER, M. D.<br>"Dep. Coroner."

Counsel for appellant has cited, in support of his contention, a number of authorities, but, aside from that of Schmidt v. Supreme Council Royal Arcanum, 207 S. W. 874, decided by the St. Louis Court of Appeals, which will be considered later, we do not find that any of them construe our statute relating to this subject, nor do they deal with any statute of a similar nature.

In 1909 the General Assembly of this State passed an act (Laws 1909, p. 538 et seq.) providing that the State Board of Health should maintain a system of regis-

tration of births and deaths in this State, etc. Sections 7 and 8 of said act are known in Revised Statutes 1909 as Sections 6670 and 6671. The last named sections appear in Revised Statutes 1919 as Sections 5802 and 5803. Section 5802 specifies what the certificate of health shall contain. Paragraphs 15, 16, 17 and 18 of said section read as follows:

"(15) Date of death, including the year, month and day.

"(16) Statement of medical attendant of decedent, fact and time of death, including the time last seen alive.

"(17) Cause of death, including the primary and contributory causes or complications, if any, and duration of each.

"(18) Signature and address of physician or official making the medical certificate."

Section 5816, Revised Stautes 1919 (same as Sec. 6684, R. S. 1909), among other things, provides that:

"The State Registrar shall, upon request, furnish any applicant a certified copy of the record of any birth or death registered under provisions of this article, . . . And any such copy of the record of a birth or death, when properly certified by the State registrar to be a true copy thereof, shall be prima-facie evidence in all courts and places of the facts therein stated."

We are of the opinion, that the Legislature had the legal right to make the foregoing certificate prima-facie evidence of the matters authorized to be incorporated as a part of said record. The power of the General Assembly to so legislate has been upheld in respect to kindred subjects.

In Priddy v. Boice, 201 Mo. l. c. 333 and following, GRAVES, J., in behalf of Division One, in an able and exhaustive review of this subject, held that certified copies of the United States census were competent evidence in determining the age of Mrs. Priddy.

In Levels v. Railroad, 196 Mo. l. c. 622, Section 9800, Revised Statutes 1899, which required school teachers to keep a daily register containing the names, etc., of pupils,

was under consideration. The trial court excluded a register, properly kept, as evidence in the case tending to show the age of a certain pupil. VALLIANT, J., in discussing the above question, said:

"It was not record evidence in the strict sense of conclusiveness, but like the school enumeration lists and the United States census lists, it was competent evidence to be weighed in the balance with other evidence."

A number of authorities are cited in support of above quotation.

In Moore v. Gaus & Sons Mfg. Co., 113 Mo. l. c. 110, GANTT, J., speaking for this Division, held that a copy of the signal service record, kept by the United States Government, was properly admissible as evidence.

In Finer v. Nichols, 122 Mo. App. l. c. 500, GOODE, J., speaking for the St. Louis Court of Appeals, in which NORTONI, J., concurred, held that the record of the Health Department of St. Louis, kept by virtue of the charter and ordinances of said city, was competent to show the date of the birth mentioned therein. He further said:

"The record was competent evidence by express statutory enactment and by force of the common-law rule that official registers, kept by persons in public office, wherein the law requires the happening of certain events to be recorded, are admissible as evidence when the occurrences of which they speak are drawn into question. [1 Greenleaf On Evidence (last Ed.) sec. 483.]"

In Ohmeyer v. Supreme Forest Woodmen Circle, 91 Mo. App. l. c. 201-2, BLAND, J., of the St. Louis Court of Appeals, said:

"The paper offered was one required by public law to be recorded and filed in the office of a public functionary, whose office is created by public law, to-wit, the charter of the city: and the same law makes an exemplified copy of the paper presumptive evidence of its contents in all courts of justice. . . . The certificate offered in evidence is called a copy of the burial certificate, but is in both form and substance a certificate of death, conforming in every particular with the charter

(section 10, supra), and was deposited where the law required a death certificate to be filed, to-wit, in the office of the health commissioner. It was properly authenticated, and by express provision of the charter was competent evidence and should have been admitted as presumptive evidence of the fact that Kate Geraghty died of consumption.''

In Reynolds v. Prudential Insurance Co., 88 Mo. App. 1. c. 684, ELLISON, J., of the Kansas City Court of Appeals, in considering this subject, said:

''So, therefore, if a statute required the physician to certify the death of a party to the board of health and did not require a statement as to his age or place of birth, the record of his statement of those things would not be evidence of them, since they are not a part of the transaction of death, neither are they concomitant. But where the law requires certain statements to be made, then the record of those statements is evidence of the things stated.''

To the same effect are the following authorities: State ex inf. v. Heffernan, 243 Mo. 1. c. 453; Delmar Inv. Co. v. Lewis, 271 Mo. 1. c. 322-3, 196 S. W. 1137; Corpus Juris, vol. 22, p. 791 and cases cited; 10 Ruling Case Law, sec. 303, p. 1100; 3 Wigmore on Evidence, sec. 1630.

In the case of Schmidt v. Supreme Council of Royal Arcanum, 207 S. W. (Mo. App.) 874, relied on by appellant, the plaintiff sued on a benefit certificate issued to her husband by the defendant. Under the pleadings, the sole issue on the case was whether or not her husband took his own life. The defendant contended that plaintiff's husband had committed suicide, and introduced as evidence of that fact, a certificate of death, containing the words, ''contributory-suicide.'' It was insisted by appellant that said certificate of death established a prima-facie case of suicide. Section 6671, Revised Statutes 1909 (Sec. 5803, R. S. 1919) under which the certificate of death was issued, provides as follows:

''In case of any death occurring without medical attendance, . . . if the circumstances of the case

render it probable that the death was caused by unlawful or suspicious means, the registrar shall then refer the case to the coroner for his investigation and certification.''

BECKER, J., found from the record before him that the death certificate was made under said Section 6671, and not under Section 6670, Revised Statutes 1909. He also recites in his opinion that said certificate was signed by a deputy coroner, and not by an attending physician. After finding that said certificate was made by the deputy coroner under Section 6671, and not by an attending physician, Judge BECKER said (207 S. W. 877):

''Therefore the statement in the certificate of the deputy coroner that the cause of death was 'hemorrhage due to knife wound on wrist, contributory-suicide' was a statement of the conclusion that had been reached by the men who formed the coroner's jury, and was therefore not the statement of a fact such as the statute contemplates shall be accepted as prima-facie evidence. Such a statement is required under Section 6671, Revised Statutes 1909, namely, whether the cause of death was 'probably accidental, suicidal or homicidal;' but for the reasons stated above such statement cannot in a legal sense be considered a 'fact' in the certificate of death such as under Section 6684 should be considered as 'prima-facie evidence of the facts therein stated.' That the coroner or coroner's jury may have come to the conclusion, from the autopsy which was held and the facts presented before them, that the deceased had 'probably' committed suicide, could have but little probative value in a case such as this, where the very issue in the case was whether or not the deceased had come to his death by reason of his having committed suicide. It is different where the attending physician, under Section 6670, has filled in the answers to the questions in a certificate of death. There his answers are answers of fact, namely, the date of the death, the length of time the physician attended the deceased, the last time he saw him alive, the cause of death, and any contributing cause. It will be readily seen that answers to such questions by the

attending physician would be matter of fact within the physician's own knowledge, which is not the case in a certificate made up by a coroner.

"We therefore rule that the statement, in the coroner's certificate of death, that 'suicide' was 'contributory' to the death of the insured, was not a statement of fact as in contemplation of Section 6684 would make out a prima-facie case for defendant. To sustain appellant's contention that the certificate of death has the force and effect claimed for it would be tantamount to usurping the functions of the court and jury in most cases of accidental, suicidal, or homicidal death, where the question in issue is whether or not the death had been accidental, suicidal, or homicidal."

We are of the opinion that the death certificate in the case before us was not made under and pursuant to Section 6671, supra, for several reasons: First, because there is nothing on the face of the certificate indicating that the matters covered therein had ever been referred to the coroner for his investigation and certification, as provided in said section; second, because said section only provides for those cases being sent to the coroner for investigation and certification, where the death occurs without medical attendance. In this case, the evidence, as well as the certificate, shows that Charles Sampson, on the day of his injury, was sent to the City Hospital, and the certificate shows that his death resulted from shock and injuries while both feet were being amputated. It could hardly be presumed, in the absence of evidence on the subject, that an operation of the above character would have been performed at the city hospital by a person who was not a physician or surgeon and, hence, Sampson did not presumably die without medical attendance as contemplated by said section; third, because it is provided in said Section 6671 that the above matters might be referred to the coroner for investigation and certification in those cases where the death "was caused by unlawful or suspicious means." There is nothing in the record or facts before us tending to show that the coroner had anything to do with this

case. Dr. Wm. Dever, who signed the certificate, may also have been a deputy coroner, and hence, signed his name to the certificate, both as a physician and as deputy coroner.

We therefore conclude that the certificate in this case is based upon Section 6670, Revised Statutes 1909 (Sec. 5802, R. S. 1919), and further find that it was properly admitted in evidence by the trial court.

(a) After carefully reading the authorities heretofore cited, we hold that where a certificate is required to be filed with the registrar from either the coroner or attending physician, the Legislature intended, in both Sections 6670 and 6671, that all those matters required by law to be stated in the certificate were to be taken as prima-facie evidence, "in all courts and places of the facts therein stated,' as contemplated in Section 6684, Revised Statutes 1909 (Sec. 5816, R. S. 1919). Unless the coroner's certificate, after investigation is treated as prima-facie evidence as to those matters required to be incorporated therein, it would be utterly useless as a public document.

Meaning of Statutes.

In State ex inf. v. Heffernan, 243 Mo. l. c. 453, the rule of law in respect to the above matter, is very clearly stated as follows:

"No proposition is better settled or more universally recognized than that every intendment of law is made in favor of the regularity of corporate acts and proceedings. Where records are kept of municipal acts and proceedings the law is clearly defined that the same are receivable in evidence of the truth of the facts recited; and it would seem to be a rule that when so produced they establish themselves; because they are made by accredited agents, are of a public nature and notoriety, and are usually made under the sanction of an oath of office."

The above ruling was approved and followed In Banc, in Delmar Inv. Co. v. Lewis, 271 Mo. l. c. 323, and is in full accord with the principles of law declared in the other cases heretofore cited.

III.   Leaving out of consideration the question as to whether the death certificate was properly admitted in evidence, we are of the opinion that the jury, on the facts presented in this record, would have been justified in finding therefrom that Charles Sampson, on April 19, 1919, died as a result of the shock and injuries which he received in a collision with defendant's street car.   It is undisputed that a collision occurred; that immediately thereafter Sampson was found lying on the street with his feet under the street car, after the two front wheels of said car had passed over his instep and feet; that he, was taken to the City Hospital and died within one week of the accident.   It is undisputed that he was in good health up to the time of the accident.   We then have in the record, a collision, with a man's feet practically mashed off, followed by his death one week thereafter.   In the absence of any evidence tending to show that he might have lost his life in some other way, we think the jury would have been warranted in finding from the testimony, that his death resulted from the collision with defendant's street car.   [Burtch v. Wabash Ry. Co., paragraph 2, opinion In Banc, filed November 30, 1921; Soeder v. Ry. Co., 100 Mo. l. c. 680.]

*Sufficient Other Facts.*

IV.   It is contended by defendant that the statements under paragraph 17 of the death certificate are mere conclusions, and that they do not constitute a statement of the facts.   It is undisputed that defendant's street car collided with Sampson and the front wheels of said car ran over his ankles and feet.   The certificate shows that Sampson's feet were amputated and that he died from the shock and injuries which he had received, due to the street railroad.   It was not necessary that Dr. Dever should have set out in his certificate the evidence, on which he relied for the conclusion reached.   The Legislature, in the exercise of its prerogative, did not require anything more than was stated.   It would be impractical to encumber

*Mere Conclusion.*

these public records with the details upon which the recorded facts are based.

_V. Appellant insists that paragraph 17 of the death certificate, if admitted in evidence, is an invasion of the province of the jury, and cuts off its right of cross-examination, etc. The Legislature, in dealing with this

Cross-Examination. of questions, has the undoubted right to determine what the death certificate · shall contain, and to make the matters called for therein prima-facie evidence, although the same matters may not be admissible as evidence, for any purpose, under other circumstances. Where the question is one of age, the census, as heretofore shown, may be introduced as evidence tending to show the date of birth, etc. A properly kept school register would also be admissible to show the age and attendance of a pupil. In view of the law heretofore cited, the census and school register could not be legally excluded as evidence, because they afforded no means of cross-examination, and because the admission of same would invade the province of the jury.

We therefore conclude, that the death certificate in this case was properly admitted in evidence.

VI. It is contended by appellant that the petition · is insufficient to state a cause of action based on the alleged failure of the motorman to use ordinary care in stopping the car while the truck was passing over the track in front of same. It is claimed to be insufficient,

Insufficient Allegations. under the humanitarian rule, because it does not allege that either the decedent, or the chauffeur driving the truck, was oblivious of the peril and that the motorman, saw, or by the exercise of ordinary care should have seen, that the decedent or chauffeur was in peril and oblivious of the car's approach, etc.

There is nothing in the record to indicate, that the petition was attacked by demurrer, motion in arrest of judgment or in any other manner at the trial. The de-

fendant asked, and received instructions which contained no reference to "obliviousness." Under the Statute of Jeofails (Sec. 2119, R. S. 1909; Sec. 1550, R. S. 1919), and the settled doctrine of this court as announced in its previous rulings, the appellant, by reason of the foregoing, is in no position to attack said petition, even if the latter was obnoxious to the criticism leveled against it. [Machinery Co. v. Bottling Co., 273 Mo. 142, 200 S. W. 1079; Tebeau v. Ridge, 261 Mo. 547; Winn v. Railroad, 245 Mo. l. c. 412; Sawyer v. Wabash Ry. Co., 156 Mo. l. c. 476; Cook v. Smith, 200 Mo. App. l. c. 223, 204 S. W. 919; Cook v. Kerr, 192 S. W. (Mo. App.) 466. See also authorities cited in the succeeding proposition nine.]

VII. The evidence is undisputed that Howard, the foreman, was in charge of the truck, and Sampson was a passenger thereon, whether located on the rear of the truck or standing on the running board of same. There is no evidence in the record which indicates that decedent knew the car was approaching until it was in close proximity to the truck. It was a question for the jury as to whether Thomas, the chauffeur, was guilty of negligence in going upon the track in front of a moving car, but his negligence, if it existed, cannot be imputed to decedent. [Mahany v. K. C. Rys. Co., 228 S. W. (Mo.) l. c. 823; Moon v. St. Louis Transit Co., 237 Mo. l. c. 434, 141 S. W. 870; Neff v. City of Cameron, 213 Mo. l. c. 359, 111 S. W. 1139; Petersen v. Transit Co., 199 Mo. l. c. 341, 97 S. W. 860; Sluder v. Transit Co., 189 Mo. l. c. 139, 88 S. W. 648; Becke v. Mo. Pac. Ry. Co., 102 Mo. 544, 13 S. W. 1053; Davis v. City L. & T. Co., 222 S. W. (Mo. App.) l. c. 885; Lawler v. Montgomery, 217 S. W. (Mo. App.) l. c. 857; Leapard v. K. C. Rys. Co., 214 S. W. (Mo. App.) 268-9; Montague v. Ry. Co., 193 S. W. (Mo. App.) l. c. 936; Profit v. Ry. Co., 91 Mo. App. l. c. 375; Munger v. City of Sedalia, 66 Mo. App. l. c. 631-2.]

*Imputed Negligence.*

VIII.   Defendant insists that plaintiff's instruction numbered one relating to the merits of the case, is erroneous, "in that while it requires the jury to find that 'after the motorman of said street car saw, or should have seen, in the exercise of ordinary care, the danger of said car running into said truck, that the motorman failed to use ordinary care to stop said car,' etc." It is then claimed, that no duty existed on the part of the motorman to commence stopping the car until he saw, or in the exercise of ordinary care could have seen, that the decedent or the chauffeur was oblivious of the peril, and was not going to do anything towards stopping the truck.

Instruction:
Obliviousness.

The above criticism of said instruction is not well founded for several reasons:  (1)  Because it ignores the testimony of Howard, the foreman of the truck, and of Thomas, the chauffeur thereof, to the effect, that the car stopped at the corner of Biddle and 6th Streets, and that the motorman in charge of said car, motioned the chauffeur to go on over the track. It was the province of the jury to pass upon the weight of the evidence. If the jurors believed the testimony of above witnesses to be true, the motorman was clearly guilty of negligence in running the truck down after he had warned the chauffeur to cross the track. The instruction was sufficient to cover this theory of the case, and under the above circumstances, the question of obliviousness, etc., has no place therein. If the motorman stopped, motioned the chauffeur to pass over the track, and thereafter ran his car into a collision with the truck, as the driver of same was acting on said signal and passing over the track, a case was made for the jury regardless of the "obliviousness" of either the decedent or chauffeur.  (2)  Because the jury may have believed from the evidence that the motorman, when he arrived at Biddle Street, had good reason to believe, and did believe, that the driver of the truck intended to pass over the track in front of the car without any intention of stopping.  Assuming that it was twenty-five or thirty feet from the corner, where

the motorman said he slowed down, to the point of collision, the jury may have concluded from his own evidence that his car could have been stopped within ten or twelve feet from the time he saw the truck was headed for the track, without any intention of the chauffeur to stop before passing over same. The instruction was sufficient to cover the above theory of the case, without regard to the question of obliviousness, etc. (3) Because, neither the motorman, nor the conductor testified, that he had any reason for believing that the chauffeur, after he first came into view, had the slightest idea of stopping the truck before he passed over the track. As they both testified that the street car was going about four or five miles per hour, and as the motorman said it could be stopped in ten or twelve feet, it was the province of the jury to determine whether the motorman exercised ordinary care in permitting his car to come into collision with the truck, regardless of the obliviousness of either the decedent or chauffeur under such circumstances.

(a) The converse of plaintiffs' instruction numbered one was given by the court at the instance of defendant, and reads as follows:

"The court instructs the jury if you believe and find from the evidence that the truck mentioned in the evidence was driven upon the street car track immediately in front of the approaching street car and in such close proximity thereto that it was impossible for the motorman of said street car, by the exercise of ordinary care, and with the appliances at hand, with due regard for the safety of his passengers, to stop such car in time to avert the threatened collision and prevent injury to the decedent, Charles Sampson, after said motorman saw, or by the exercise of ordinary care he could have seen, that the automobile would be driven upon the track in near proximity to the car and in peril of a collision therewith, then plaintiffs cannot recover, and your verdict must be for the defendant."

This instruction, in connection with plaintiffs' supra, presented to the jury all the law that was necessary, in passsing upon this branch of the case.

IX.   Appellant assigns as error the action of the trial court in giving plaintiffs' instruction numbered two, on the measure of damages, which reads as follows:

"If the jury find for plaintiff your verdict will be in the sum of $2,000, unless the jury find from the evidence that the mother and a sister of Charles Sampson suffered by reason of his death a necessary pecuniary injury in excess of the sum of $2,000; in which event your verdict will be for the amount of said necessary injury; in no event, however, to exceed the sum of $10,000."

Measure of Damages.

The court gave, at the instance of appellant, four instructions relating to the measure of damages, in which the jurors were advised as to what they should consider if they found for plaintiffs.  Plaintiffs' instruction on the measure of damages was within the purview of Section 4217, Revised Statutes 1919, as it was construed by our Court in Banc in Boyd v. Mo. Pac. Ry. Co., 249 Mo. l. c. 120.  The law as declared in the Boyd Case, supra, was emphasized and followed In Banc in State ex rel. Dunham v. Ellison, 278 Mo. 649, and by this Division in Tavis v. Bush, 280 Mo. 383, 217 S. W. 274.  The above instruction was based on the law as declared in the above and other cases, and the petition sufficiently covered this question.

If counsel for appellant, at the date of trial, was of the opinion that the above statute was wholly penal, he should have put himself on record as challenging the construction placed on said section in the Boyd Case.  Instead of pursuing this course, he voluntarily adopted plaintiffs' theory of the law as it then stood, and framed his instructions accordingly.  In other words, both plaintiffs and defendant voluntarily tried the case on the theory that said statute should be construed as indicated in the Boyd Case and other similar cases above mentioned.

Having tried the case as above stated, the defendant cannot be permitted to assert here, as error, the action of the trial court in thus disposing of the case upon the theory voluntarily adopted by counsel for both parties. [Holmes v. Braidwood, 82 Mo. l. c. 617; Bettes v. Magoon, 85 Mo. l. c. 585-6; Thorpe v. Railroad, 89 Mo. 650-1; Fairbanks v. Long, 91 Mo. 628; Reilly v. Railroad, 94 Mo. l. c. 611; Hilz v. Railroad, 101 Mo. l. c. 41-2; Tomlinson v. Ellison, 104 Mo. l. c. 112; Phelps v. City of Salisbury, 161 Mo. l. c. 14; Black v. Railroad, 172 Mo. l. c. 187-8; Tube Works Co. v. Ice Machine Co., 201 Mo. l. c. 64; Lange v. Railroad, 208 Mo. l. c. 475; Taylor & Sons Brick Co. v. Railroad Co., 213 Mo. l. c. 729; Gordon v. Park, 219 Mo. l. c. 612; Kame v. Railroad, 254 Mo. l. c. 197; Miller v. Harpster, 273 Mo. l. c. 614; Aronovitz v. Arky, 219 S. W. (Mo.) l. c. 622.]

The length of this opinion will preclude us from reviewing the authorities cited in the reply brief to the effect that defendant should not be estopped on account of it having adopted the same theory as did plaintiffs in the trial of the case. The record conclusively shows that this case was voluntairly tried by counsel for plaintiffs and defendant on the theory that the statute was penal to the extent of $2,000, and compensatory, etc., as to the remainder up to $10,000. Appellant is now relying on the fact that, under the present ruling of this court, the statute is penal throughout. It raised no such issue in the trial court, either by instructions or otherwise. It tendered no such issue to either the court or the plaintiffs in the case, but, on the contrary, tried the case on the law as it stood prior to the Grier decision, 286 Mo. 523, 228 S. W. 454. We are decidedly of the opinion, that the doctrine announced in Cochran v. Ry. Co., 113 Mo. 359, on the subject of estoppel, as well as the subsequent cases along the same line, should not be followed, even if considered sound, as applied to the facts of this case.

The foregoing assignment of error is accordingly overruled.

X. The court properly refused defendant's Instruction F, because it is erroneous in several particulars, as heretofore shown, and does not properly declare the law. It told the jury that if the driver of the automobile swerved the truck to the northward, "then the motorman of the street car had a right to assume that the automobile truck would either stop or go to the north and not come upon the track." There was no room for presumptions in this case, in the face of the positive testimony of numerous witnesses as to what occurred, and especially in the face of the overwhelming testimony to the effect that the occupants of the truck were moving ten or twelve miles an hour and going straight over the track. The motorman himself testified that the truck, in his opinion, was travelling east on Biddle Street at the rate of about twelve miles per hour, while he was traveling four or five miles per hour; and that the truck when within five or six feet of the car track, swerved a little to the north and passed on east to the track. The motorman does not claim, in his testimony, that he failed to use any of the appliances to stop the car, on the theory that it would turn north. Without considering the subject further, we hold that said instruction was erroneous and properly refused.

*Assumption of Fact.*

XI. Appellant contends that error was committed in the refusal of its Instruction G, which authorized a verdict for defendant, if decedent jumped from the truck and was injured, when he would not have been hurt had he remained thereon. The plaintiffs' evidence shows that decedent was occupying a seat on the back part of the truck and was knocked off in the collision between the car and truck. The defendant's evidence tends to show that decedent was on the running board of the truck, and that he jumped off the running board as the car was in close proximity to him and fell with his feet under the car.

*Omission of Material Facts.*

This instruction is fatally defective, because it authorized a verdict for defendant within itself, based on

insufficient facts, without undertaking to define the duty of either decedent or the motorman, although the former may have been in peril, and sought to avoid sudden and impending danger caused by defendant's negligent acts. [Kleiber v. Ry. Co., 107 Mo. 240; Bischoff v. Ry. Co., 121 Mo. 1. c. 225; Ephland v. Ry. Co., 137 Mo. 187; Cooper v. Realty Co., 224 Mo. 1. c. 728-9; Delfosse v. Rys. Co., 201 S. W. (Mo.) 1. c. 862-3; Stanley v. Helm, 204 Mo. App. 1. c. 166, 223 S. W. 127, and cases cited; Moore. v. Street Ry. Co., 189 Mo. App. 555, 176 S. W. 1120.]

XII. Appellant complains of the court's action in refusing its Instruction E. According to our conception of the law, this instruction, which authorized a verdict for defendant based on the facts stated therein, is erroneous in several particulars.

First, because the jurors were prohibited therein from finding for plaintiffs, unless they believed Omitting from the evidence that the street car stopped at Issues. the corner of 6th and Biddle Streets, and while said car was standing at said corner, the truck slowed down to a slow rate of speed; and unless they believed that the motorman motioned the driver of the truck to cross the track, etc. This instruction is vague and indefinite on its face. The jurors may have believed from the evidence that the occupants of the truck were moving rapidly toward the track with the intention of passing over -same without stopping, yet, the jurors had the right to return a verdict for plaintiffs, if they found that the motorman motioned the driver to pass over the track, and negligently ran the car too rapidly to enable .the truck to pass over in safety, while the driver was acting on the motorman's invitation to go over, regardless of the other matters said instruction required the jury to find.

Second, because the jurors may have believed from the testimony, that the car came to a standstill at the corner of Biddle and 6th Streets; and may also have

found, that while the car was thus standing, the motor-man had good reason to believe and did believe, that the driver of the truck had no intention of stopping, before said car was moved from a standstill. If so, the motor-man was guilty of negligence in starting the car and proceeding to a collision under such circumstances.

We are of the opinion, that no error was committed in refusing said instruction.

XIII. Some other questions are discussed in the briefs, but owing to the length of this opinion we do not deem it necessary to discuss them, although we have carefully examined and considered every proposition involved in the case. On the record before us, we think plaintiffs made out a case for the jury, based on substantial testimony, and that appellant has received a fair and impartial trial along the lines voluntarily selected by its counsel.

The judgment below is accordingly affirmed. *White* and *Reeves, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All of the judges concur; *Higbee, P. J.,* concurs in all except paragraphs two and five.

## ON MOTION FOR REHEARING.

HIGBEE, P. J.—I concur in overruling the motion for rehearing, but do not agree that the death certificate was admissible in evidence in so far as it states that the cause of the death was "due to street car." The attending physician could properly certify that the cause of the death was "shock and injuries, traumatic amputation of both feet," but the statement "due to street car" was a mere conclusion and not the statement of a fact within the meaning of Section 5802, Revised Statutes 1919. However, the admission of this certificate was not prejudicial error. There was ample evidence that deceased died from the effects of the traumatic amputation of his feet. There was really no controversy about the cause of his death.