COMMERCIAL BANK OF KENTUCKY, Plaintiff in Error, v. WILLIAM H. BARKSDALE *et als.*, Defendants in Error.

1. *Bills of Exchange—Protest—Evidence.*—The official protest of a notary is the proper legal evidence of the presentment, demand and refusal of payment of a foreign bill of exchange, and such protest cannot be dispensed with as in cases of inland bills.

2. *Bills of Exchange—Protest—Notary Public.*—The presentment and demand of payment of a foreign bill of exchange must be made by the same notary who protests the bill; it cannot be done by his clerk, nor by any other person as his agent, although he be also a notary. Notaries are public officers, and as such cannot act as partners. A protest made by one notary, when another notary made the demand of payment, is not a legal protest. The protest, or the noting of the bill for protest, must be made upon the same day the presentment is made.

3. *Bills of Exchange—Conflict of Laws—Lex Loci.*—A foreign bill of exchange must be presented for payment upon the day on which it is payable by the law of the place of payment.

4. *Bill of Exchange—Excuse of Notice.*—The drawer of a bill of exchange, who, by his course of dealing with his correspondent, has reasonable cause for believing that his drafts will be duly honored, is entitled to notice of protest.

*Error to St. Louis Court of Common Pleas.*

This was a suit instituted March 13, 1861, on a bill of exchange, dated at St. Louis, Mo., September 4, 1860, made by William H. Barksdale & Co., in favor of John F. Darby, (acceptance waived) on the Park Bank, New York city, for $10,000, at four months, endorsed by Darby. The petition averred due protest and notice; also that William H. Barksdale & Co. had no funds at the Park Bank, and that Darby knew this at and before the maturity of said bill.

Defendants, William H. Barksdale & Co., denied that the

bill was duly presented at maturity to the Park Bank for payment, or that such payment was refused, or that the bill was duly protested for non-payment, or that defendants had any due or legal notice of any such facts. They averred that they had assets in the hands of the Park Bank at the maturity of said draft, and that it is untrue that they had no reason to believe that the bill would be paid; that between the date of said bill and its maturity they had $600,-000 in that bank, and when it matured had bonds and securities exceeding in amount $75,000; and have had large sums there ever since. Darby answered that he was accommodation endorser of the bill; denied that the same was duly presented for payment, payment demanded and refused, and notice given to him; denied that he had no reason to believe that the bill would be paid; was not aware that it had not been paid until the 16th February, 1861, when he was so informed by a letter received from the Commercial Bank of Kentucky; that from the date to the maturity of said bill he had every reason to believe that it would be paid at maturity, and did so believe.

The case was tried before the court, sitting as a jury, on the 24th January, 1863, and judgment was given for the defendants.

By the bill of exceptions, it appears that the plaintiff gave in evidence the bill of exchange and the charter of the Commercial Bank, and the testimony of Turney, Varnum, Macy, Meyers, Cole, Dallam, and Boyle. By these it appeared that the bill was protested on the 5th January, 1861; that payment was demanded by Turney, a notary; that the protest was by Varnum, notary public, and that after the commencement of this suit Turney made out a notarial act of protest, dating it back to January 5, 1861; that notice of protest was sent to William H. Barksdale & Co., at St. Louis, Mo. on the 7th January, 1861, after 10 o'clock, A. M., and that the notices for Darby and the Commercial Bank were sent to Mr. Flourney, president, on the same day. That the 4th day of January, 1861, was a day of fasting and prayer

ordered by the President of the United States and the Governor of the State of New York. By the statutes of New York, read in evidence, it appeared that no days of grace are allowed on drafts or checks on banks, and that all bills falling due on a fast day are to be taken as due in the same manner as if the fast day, &c., were a Sunday. The 5th of January, 1861, was Saturday, and the 7th day therefore Monday.

By the testimony of Cole and Dallam, officers of the Commercial Bank of Kentucky, it was made to appear that they received on the 14th January, 1861, the notices of protest, and that they sent the notice directed to Mr. Darby, to him by depositing it in the mail that same day post-paid. They denied having sent any notice to Messrs. Barksdale & Co.

Defendants read the evidence of C. C. Reuss, taken at Frankfort-on-the-Maine, whence it appeared that he was confidential clerk for Barksdale & Co. from 4th September, 1860, to March, 1861. That about the 18th or 19th January, 1861, Barksdale & Co. received notice of the protest of a draft for $10,000, of which Darby was endorser; this came from Paducah, Kentucky; in the same envelope was a notice directed to John F. Darby; the books of Barksdale & Co. showed no such draft; the books were wrong; they showed J. J. Anderson to be the endorser of this draft. Two or three days thereafter, Mr. Darby came to the office (counting-room) of Barksdale & Co.; Mr. Barksdale mentioned the arrival of the notice; the books were examined and shown to Mr. Darby in corroboration of the assurance that he was not the endorser of this draft; that Barksdale & Co. had transactions with the Park Bank amounting to upwards of $600,000, between the month of September, 1860, and the 5th January, 1861; they withdrew their account in February, 1861; it was then upwards of $80,000, chiefly in Missouri bonds.

Judge Wood was examined to show that Turney's protest had been made since the commencement of this suit; suit was commenced March 13, 1861. Mr. Wise testified that,

when as agent of the Commercial Bank of Kentucky, he called on Darby and asked him to pay this bill, he flatly and explicitly declared that he was not liable on it, and did not mean to pay it. Mr. Barksdale testified that he received from Paducah about 18th January, 1861, a protest for this bill of $10,000, enclosing also one for Darby. He gave to Darby the one intended for him two or three days afterwards, or else made him aware of it. Soon after this, his lawyer told him that both the drawers and endorsers were discharged. By advice of counsel, he made a deed of trust to secure Mr. Darby for other endorsements without Darby's knowledge; he included in this deed this draft as one endorsed by Darby, and against the consequences of endorsing which he desired to indemnify him. Darby was merely an accommodation endorser. The deed of trust was to secure $28,000 of liability of Darby as endorser besides this bill of $10,000; the deed of trust was not enough to secure the $28,000.

The plaintiff objected to Barksdale's testifying, as he was a party to the suit. The court admitted him only so far forth as he testified in respect of matters tending to the exoneration of Darby only. Plaintiff excepted.

Mr. Clement, an employee of the New York Post-office, testified that during the first half of January, 1861, there were two daily mails from New York to Kentucky, one of which was closed at 5 A. M. and the other at 3.30 P. M. This was all the evidence except an admission that the 4th January, 1861, was a regular fast day, and that the cases of 20 Wendell, 205, might be read in the Supreme Court from the printed volume, the same having been read in evidence to the court below.

At the instance of the plaintiff, the court declared the law to be as follows :

1. That as the draft sued on was payable in New York, it is governed by the laws of that State as to presentment, demand and protest.

2. That the draft sued on was not entitled to any days of grace.

3. That inasmuch as it matured on the 4th day of January, 1861, which was a day set apart by the President as a day of fast, it was properly presentable on the 5th day of January, 1861.

4. That if the 6th day of January, 1861, was Sunday, the notice of protest would be properly given on the 7th January, 1861; and if the jury find from the evidence that the notice to Barksdale & Co. was sent on that day by mail, postage pre-paid, to Barksdale & Co. at St. Louis, and to Commercial Bank of Kentucky at Paducah, the said notices were duly given.

5. If the court find from the evidence that the Commercial Bank at Paducah sent on the day, or even the day after the said notices of protest were received, the same to John F. Darby at St. Louis, by mail, postage pre paid, the said notice was sufficient.

6. That it is not material that Darby ever should have received the notice of the protest, if the notice was in fact regularly and duly enclosed to him by mail, directed to St. Louis, Mo.

8. If the Metropolitan Bank, New York, held the bill for collection, and had the possession of it as such holders when it matured, and so holding and having possession of the bill they delivered it to the witnesses Varnum and Turney, whose depositions were read in evidence, to be presented for payment, with instructions, if not paid, to protest the bill for non-payment and give notice thereof to the parties to the bill; and if, further, the said Varnum & Turney were then attorneys-at-law, and as such doing the business of the Metropolitan Bank, and were both notaries public, then in such case they were agents of the Metropolitan Bank, and a notice given to the parties by either of them of the dishonor of the bill by non-payment on presentation, was legally proper and sufficient; and although the court may find that demand was made by the at-

torney and notary Turney, it was competent and sufficient for his partner, the attorney and notary Varnum, to give notice to the parties, and the mere fact that his name and official character is in print on the notice given, and that he does not on the face of the notice claim to be agent, does not invalidate the notice.

If, in fact, under the circumstances herein stated, the notice was given by said Varnum, on the request of said Metropolitan Bank, then in such case the notice came from said bank, and is from a party in interest authorized to give notice of protest.

10. The fact that the notary Varnum drew up and attached his certificate to the bill sued on, under the circumstances as explained by the evidence of said Varnum and Turney, does not render Turney's certificate invalid simply and merely because subsequently drawn up by said Turney.

Plaintiff's instructions refused :

7. A copy of the protest need not accompany the notice of dishonor of a bill. If a bill be properly presented for payment, and the payment refused, and notice thereof be properly given, stating, in addition, the protest of the bill, the formal documentary protest may be drawn up afterwards before the trial ; and if so drawn up, the same will constitute a legal protest of the bill, though not made out at the time of the dishonor of the bill, nor previous to giving notice of protest.

9. It is not necessary to the validity of a certificate of protest, that it be drawn up on the day of demand and refusal of payment, nor is it necessary that such certificate, or a copy thereof, should be sent with the notice. It may be drawn up when called for, or at any time before trial, providid the bill was properly presented for payment by a notary public at the request of the holder, and payment demanded and refused, and a proper notice of the protest is given and in due time.

The following instructions were given for defendants :

1. In order to entitle the plaintiff to recover judgment

against the defendant Darby in this case, it is necessary for it to satisfy the jury, by evidence, that the bill of exchange sued on was, at its maturity, presented at the place where payable for payment; that payment was then and there demanded and was refused; that the said bill was duly protested for non-payment, and that the defendant had due notice of such demand, refusal and protest.

3. To make a valid presentment by a notary, it is necessary that such notary make a personal presentment and demand, and a protest of a bill by a notary who did not make such presentment and demand is insufficient to hold the endorser.

8. If the jury believe from the evidence that the only notice of dishonor of the bill sued on was furnished from Paducah to St. Louis in an envelope, addressed to Wm. H. Barksdale & Co., St. Louis, and was never delivered to or received by said Darby within two days after said notice reached St. Louis, then the defendant Darby is not liable in this case, and the jury will find for said defendant Darby.

9. If the court believe from the evidence that the bill of exchange sued on was not protested for non-payment by Turney until after this suit was instituted, such protest is not sufficient to render the endorser liable.

10. If the court believe from the evidence that J. B. Varnum never presented the bill sued on for payment, then his protest is of no effect.

13. Unless the bill sued on was legally protested at maturity, plaintiff cannot recover. If Varnum protested the bill on the presentation made by Turney, this is insufficient in law.

15. If the notary who protested the bill in New York, made out notices thereof for the cashier of the plaintiff and defendants Darby, Barksdale & Co., and enclosed the notices to plaintiff and said Darby with a copy of the notice to Barksdale & Co. in one envelope and package, mailed the same, addressed to the cashier of plaintiff, Paducah, Kentucky, and that plaintiff, by its agent, enclosed the copy of

the notice to Barksdale & Co. and the notice to said Darby in one package and envelope, and deposited it in the mail, addressed to Wm. H. Barksdale & Co., St. Louis, these facts do not constitute sufficient notice to charge the defendant Darby.

19. Unless the witness Turney, as a notary, noted the bill for protest, or actually protested the bill on the day of its maturity, the protest of said Turney is not sufficient in law.

*L. Hunton*, for plaintiff in error.

Barksdale & Co. were not entitled to notice, for they had not provided for the payment of the bill, and had no reason to expect it would be paid. How could they reasonably expect the bill to be paid, unless they allowed the bank to pay it? The Park Bank was not authorized to sell the securities which they held, and pay the draft without the order of Barksdale & Co. If Barksdale & Co. were not entitled to notice, then they were not discharged by any irregularity in the protest. (Rhett v. Poe, 2 How. 457; Byles on Bills, 204–34; Sto. on Bills, § 280.)

A verbal notice of the dishonor of a draft is sufficient. The protest of a foreign bill is necessary. We offer the protest of Turney, the notary who protested the bill; it is in due form in every respect. It does not appear when it was made; the presumption is that it was made out at the proper time; it is his official act. No proof has been offered as to the particular day or time when it was formally made out; it is a mere inference that it was not made out when the bill was dishonored, because it seems that Varnum made a protest, which is also in the record.

We insist that our case is fully made out with Turney's protest. As to the certificate of protest made by Varnum, we submit that it by no means is nullity for the reason that he did not make the presentment and demand, but the effect of his failure is that his certificate could not be offered as conclusive proof of that fact, and for that reason the testimony of Turney was taken to prove protest and demand.

Turney's certificate was sufficient, for he was the notary who presented the bill, and even if it were out months afterwards it is sufficient, if any note or memorandum of the presentment and demand had been made. He had the formal statement made up by his amanuensis Varnum, his partner; the "noting," by placing initials and dates on bills, is wholly unknown in this country.

In case there was something more extended and formal. A protest need not accompany the notice; it may be made out years afterwards. (17 How. 606; Cayuga Bank v. Hunt, 2 Hill. 638; Sto. on Bills, § 302, & note; Byles on Bills, 203–4.)

*T. T. Gantt*, and *Knox & Smith*, for defendants in error.

The main inquiry here is respecting the validity of the protest. The man who made the presentment neither noted the bill for protest, nor did anything towards protesting it, until after the commencement of this suit. The man who drew up the protest had nothing to do with the presentment; was there, then, a valid protest?

I. Defendants in error contend that by its very terms the protest can only be made by the person being a notary who made presentment and demand. (Byles on Bills, 146 & 255–6; Sto. on Bills., §§ 276 & 278; Chit. on Bills, p. 489–92; 4 How., Miss. 567; 3 McLean, 481; 6 B. Mon. 60; 7 Humph. 848; Edw. on B. & N. 466.)

II. That the noting at least, or incipient protest, should be made on the day on which payment is refused. (Bul. N. P. 272, quoted in Byles on Bills p. 146; Chit. on B. 492; Leftly v. Mills, 4 T. R. 174; Buller, J., 1 Sel. N. P. 302.)

III. No question can arise here whether a notarial act of protest may be made upon a presentment for payment by the notary's clerk and his (the clerk's) memorandum, or noting of the refusal. As to the law on this subject, see note (*a*.) to p. 493, Chit. on Bills. But in this case, no such facts existed and no such question can arise.

HOLMES, Judge, delivered the opinion of the court.

The decision of the case turns mainly upon the validity of the protest. The bill is to be considered as a foreign bill. (Sto. Bills, §§ 22–3.) In cases of foreign bills of exchange, the rule is too well settled to admit of question, that there must be a protest of the bill by a notary public, in all places where such officer is at hand. (Sto. Bills, § 276.) The notarial protest is evidence of presentment, demand, and refusal to pay the bill, at the time and in the manner therein stated. This rule of the law merchant is recognized by statute in this State (R. C. 1855, p. 298, § 20) ; and so essential is the production of a protest in all cases of foreign bills, that this evidence of presentment, demand and refusal cannot be dispensed with, nor supplied by other evidence of the same facts, as may be done in cases of inland bills. (Sto. Bills, § 276.) It is equally well established that the presentment and demand must be made in person by the same notary who protests the bill ; it cannot be done by a clerk, nor by any other person as his agent, though he be also a notary. The protest is to be evidence of the facts stated in it, of which the notary is supposed to have personal knowledge, and credit is given to his official statements by the commercial world on the faith of his public and official character.

In court, the instrument speaks as a witness. Such statements made merely upon the information of another person would amount to hearsay only, if the notary were himself upon the stand as a witness. The notarial protest must state facts known to the person who makes it, and he cannot delegate his official character or his functions to another. (Edw. on B. 466 ; Leftly v. Mills, 4 T. R. 174; Carmichael v. Bank of Penn., 4 How., Miss. 567; Sarcider v. Brown, 3 McLean, 481 ; Onondagua Co. Bank v. Bates, 3 Hill. 53 ; Chenoweth v. Chamberlain, 6 B. Mon. 60.) The presentment and protest are governed by the law of the place where the bill is payable, and on this principle it has been held that

where the statute law of the State (as in Louisiana) authorizes notaries to appoint deputies, a protest made by such deputy, duly appointed, would be recognized as sufficient. (Caster v. Brown, 7 Humph. 548.) But no case seems to have gone farther than this: such deputy may be considered as having a semi-official character, and sufficient authority by force of the statute; but without some change in the general rule of law, one notary can neither delegate his functions nor impart his own official character to another. Here, two notaries were in partnership in general business, and one of them undertook to present the bill and make the demand, and the other to draw up the protest and give the notice. They were both notaries, but as such they were distinct public officers, and there can be no partnership in such matters. No law or custom was proved to have existed in the State or city of New York, which changes the general rule of the law merchant on this subject. It must follow that the protest made by Varnum can have no validity; nor will that made by Turney any more avail. It seems to be clearly established by the general current of authority that the protest must be made on the same day with the presentment and demand, though a noting of the protest on the bill itself may be regarded as an incipient protest, or preliminary step towards a protest which may be completed afterwards, at any time, by drawing up the protest in form. Here, there was no noting of the bill for protest, nor any memorandum marked on the bill, by Turney; nor is there any proof of any distinct note, entry, or memorandum of protest, made by him on that day, in any other way than upon the bill itself. It would appear that he did not make the demand for the purpose of protesting the bill himself, but as the agent of his partner, the other notary. He neither protested the bill, nor noted it for protest, at the time; and his drawing up of a protest, long afterwards, must be regarded as having no basis of contemporaneous fact or present authority, and as being entirely void. (Byles, Bills, 201–203; Sto. Bills, § 283; Leftly v. Mills, 4 T. R. 174.)

37—VOL. XXXVI.

Under the laws of New York we think the presentment was made, and the notice sent, on the right day (Loller v. Burt, 20 Wend. 205); but there being no valid protest, the drawers and endorser were discharged, so far as their liability depended upon a protest and notice; and it will therefore be immaterial to inquire further concerning the notices that were sent.

It is urged on the part of the plaintiff, that the drawers were not entitled to notice, for the reason that they had no funds in the hands of the drawee, and no right to draw the bill. It appeared in evidence that there had been extensive previous dealings between the parties; that within the three or four months next preceding the drawing of the bill, there had been transactions of this kind to the amount of upwards of six hundred thousand dollars; that they had on deposit with the bank as collaterals an amount of bonds and other securities largely exceeding their indebtedness to the bank, this bill included; that a fluctuating balance remained unsettled between them; and that down to the time of the dishonor of this bill, the bills drawn upon the bank had been duly honored. These securities were soon afterwards withdrawn upon a settlement of the comparatively small balance due from them to the bank. There does not appear to have been any express agreement for a credit to any given amount; but on the footing of this previous course of dealing, and these ample securities, the drawers may very reasonably have counted upon a prompt payment as usual. At any rate, it cannot be said that they had absolutely no funds in the hands of the drawee, no right to draw the bill, and no reasonable expectation that it would be paid. In such case, the drawee is entitled to notice, that he may take measures to close his account and withdraw his securities. (Edwds. Bills, 451; Blackman v. Doren, 2 Camp. 503; Orr v. Maginnis, 7 East. 359; Rucker v. Hiller, 16 East. 43; Campbell v. Pettingell, 7 Greenl. 126; French v. Bank of Columbia, 4 Cranch, 141; Robinson v. Ames, 20 J. R. 146.) No instructions were asked, or given, directly bearing on this

subject. The case seems to have been tried upon the admitted theory that the drawers were entitled to a protest and notice. The evidence on this. head was amply sufficient to warrant the instructions which were given, so far as they rested on this basis; and the verdict being for the defendants, we cannot say that it was, in this respect, either without evidence, or against the weight of evidence: on all other points, also, the law appears to have been fairly and correctly laid down in the instructions which were given on either side; and in those refused for the plaintiff, we have not found any substantial error.

The judgment is affirmed. Judge Wagner concurs; Judge Lovelace absent.