ISAAC RANDOLPH, (Plaintiff) Respondent, v. SUPREME LIBERTY LIFE INSURANCE COMPANY, a Corporation, (Defendant) Appellant, No. 41364—221 S. W. (2d) 155.

Court en Banc, June 13, 1949.

252

*Geo. L. Vaughn* for appellant.

*Frank S. Bledsoe* for respondent.

HYDE, J.—Action on life insurance policy, judgment for plaintiff for $740.54, including interest and attorneys fees for vexatious refusal to pay. The St. Louis Court of Appeals reversed and remanded. [Randolph v. Supreme Liberty Life Ins. Co., 215 S. W. (2d) 82.] The principal question for decision is the admissibility of a death certificate, required by §9766 and made prima facie evidence by §9781, as against a claim of privilege under §1895. [Statutory references are to R. S. 1939 and Mo. R. S. A.] The judges of the Court of Appeals disagreed and we transferred the cause.

This question arises on a policy for which no examination was required but which provided that it should not take effect "unless upon its date the assured shall be alive and in good health." The application contained statements that applicant was in sound health and had not consulted a physician within three years. The death certificate was offered to show that the applicant was not in sound health at that time. Other facts may be found in the opinions in the Court of Appeals.

Section 1895 provides that a physician or surgeon shall be incompetent to testify "concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon." This statute goes back to 1835. (Laws 1835, p. 623, §17.) It is a privilege of the patient and may be waived by him. [Carrington v. City of St. Louis, 89 Mo. 208, 1 S. W. 240; Davenport v. City of Hannibal, 108 Mo. 471, 18 S. W. 1122; State v. Sapp, 356 Mo. 705, 203 S. W. (2d) 425; 58 Am. Jur. 247, §437.] There was no such privilege at common law. [58 Am. Jur. 232, §401.] Since this

privilege is statutory, the Legislature certainly may modify or abolish it in whole or in part.

Sections 9766 and 9781 are a part of the Vital Statistics Act of 1909. [Laws 1909, p. 538; now §§9760-9783.] This Act established a state system of registration of births and deaths to be permanently preserved by a State Registrar. (§9778) It provided (§24) "that all laws and parts of laws inconsistent with the provisions of this Act are hereby repealed." Section 9764 requires a death certificate before burial of the body of any person. Section 9766 states what the death certificate shall contain and includes: "(16) Statement of medical attendant of decedent, fact and time of death, including the time last seen alive. (17) Cause of death, including the primary and contributory causes or complications, if any, and duration of each." This section further requires the physician, last in attendance on the deceased, to "state the cause of death, so as to show the course of disease or sequence of causes resulting in the death, giving the primary cause, and also contributory causes, if any, and the duration of each." Section 9781 requires the State Registrar, upon request, to "furnish any applicant a certified copy of the record of any birth or death" upon payment of a fee of fifty cents; and further provides that "any such copy of the record of a birth or death, when properly certified by the State Registrar to be a true copy thereof, shall be prima facie evidence in all courts and places of the facts therein stated."

We think it is clear that this Act made death certificates public records by requiring them to be permanently kept by a public officer and making them available to anyone who desired to have the information contained in them. How can there be any privilege in facts that are thus made public? We do not think it is reasonable to say that these facts, which are thus made public and open to the world on application for any other purpose, may not be had for use in court when our statute specifically provides that they shall be evidence in all courts. We think the Supreme Court of Iowa correctly answered this question, in State v. Flory, 199 N. W. 303, saying: "The rule which protects privileged communications has no application to public records." Furthermore, our Act not only authorized death certificates to be used as evidence but made them prima facie evidence of the facts they were required to state. We think these provisions are inconsistent with the physician privilege provision of § 1895 and that the 1909 Act therefore completely abolished the privilege to suppress any facts the Act required these public records to contain. As the Supreme Court of Utah said in the well reasoned case of Bozicevich v. Kenilworth Mercantile Co., 199 Pac. 406, 17 A.L.R. 346: "When death has overtaken the patient, however, and it becomes necessary for the public good that the cause of his death be made known, and that a public record may be made thereof, then

the privilege, to that extent, if it ever existed as against such a certificate, must yield to the public good.'' Certainly our Legislature had a reasonable basis to so provide.

There is some conflict of authority on this question as may be seen from annotations in 17 A. L. R. 359, 42 A. L. R. 1454 and 96 A. L. R. 324; 46 C. J. S. 484, § 1337 c (2); 32 C. J. S. 497; §638 b; 20 Am. Jur. 869, §§1030, 1034; 29 Am. Jur. 1116, § 1489; 58 Am. Jur. 241, §421; 5 Wigmore on Evidence, 3rd Ed., §§1644, 1646; 8 Wigmore, §2385 a. Some cases have held that a statute making a death certificate evidence is not to be construed as making the certificate a public record in the sense that it is evidence in controversies between private parties. [See cases cited in A. L. R. annotations, supra.] Some of these cases concerned certificates under ordinances or statutes before the general adoption of Uniform Vital Statistics Acts and no doubt these influenced later decisions. We do not think that such a result can reasonably be reached under the broad provisions of our statutes and our courts have upheld the admissibility of death certificates in such cases. [Simpson v. Wells, 292 Mo. 301, 237 S. W. 520; Griffith v. Continental Casualty Co., 299 Mo. 426, 253 S. W. 1043; see also Callahan v. Connecticut General Life Ins. Co., 357 Mo. 187, 207 S. W. (2d) 279; Williams v. Mutual of Illinois (Mo. App.) 283 S. W. 64; Loughlin v. Marr-Bridger Grocer Co., (Mo. App.) 10 S. W. (2d) 75; Sheppard v. Travelers Protective Assn., (Mo. App.) 104 S. W. (2d) 784, 124 S. W. (2d) 528.] The matter is summed up by Wigmore, Vol. 8, p. 827, §2385 a, as follows: ''The privilege aims primarily at securing personal peace of mind by confidentiality as to the patient's communications during his lifetime; while the vital statistics legislation considers the public interest in ascertaining causes of death, with a view to protection against malpractice, felonious killing, and epidemics. The latter interest must prevail; personal privilege can never be allowed to obstruct public welfare. The filing of the physician's certificate has already made public the nature of the disease or injury causing death (as believed by the physician); thus, the publicity against which the privilege is supposed to protect has already taken place. There can be no further assistance in that respect rendered by the privilege; it can now serve merely to obstruct the course of justice.'' We think this reasoning is sound and hold that the trial court erred in refusing to admit the death certificate in evidence. Key v. Cosmopolitan Life, Health and Accident Ins. Co., (Mo. App.) 102 S. W. (2d) 797, relied upon by some of the Judges of the Court of Appeals herein, is overruled insofar as it is inconsistent with our ruling.

Since the certificate was admissible, the testimony of Dr. Sidney E. Smith was also admissible to explain the medical terms used and to explain the nature of the diseases mentioned in it.

Defendant also assigned as error the refusal of its following instruction: "The Court instructs the jury that the question of waiving the proof of death of the insured is an affirmative fact which the plaintiff in this case was bound to establish by the preponderance, that is, the greater weight, of the credible evidence in this case; and, unless said fact has been so established by the plaintiff to the satisfaction of the jury, your verdict should be for the defendant and against the plaintiff." We hold that this was not error. In the first place the instruction contained the often criticised clause requiring proof "to the satisfaction of the jury." This was reason enough for refusing it. [See Seago v. New York Central R. Co., 349 Mo. 1249, 164 S. W. (2d) 336, and cases therein cited.] Furthermore, it was misleading to say that "waiving the proof of death of the insured is an affirmative fact." The question of waiver is a question of law. The facts upon which a finding of waiver may be based (such as were submitted in plaintiff's instruction No. 2 herein) are proper questions of fact for the jury to determine; but instructions should tell them the legal effect of proving or failing to prove such facts. This instruction says that a question of law is a question of fact.

The defendant would be entitled to have an instruction informing the jury that plaintiff had the burden of proof of the facts hypothesized in instruction No. 2 and telling them that unless said facts had been established by the preponderance of the evidence then their verdict should be for the defendant. As stated in the concurring opinion of Judge Hughes herein, an instruction may properly direct the attention of the jury to a single issue of the evidence where this relates to a distinct issue which is an essential element of the plaintiff's case. A defendant has the right to have a separate instruction, on each essential element of plaintiff's case, telling the jury that plaintiff's failure to prove the facts necessary to establish such element requires a verdict for defendant; or to hypothesize defendant's theory of facts, contrary to plaintiff's theory, which if found would require a verdict for defendant. [Roth v. Roth, (Mo. App.) 142 S. W. (2d) 818, and cases cited; Bloecher v. Duerbeck, 333 Mo. 359, 62 S. W. (2d) 553; Woods v. Southern Ry. Co., (Mo. Sup.) 73 S. W. (2d) 374; Teel v. May Department Stores Co., 352 Mo. 127, 176 S. W. (2d) 440; Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S. W. (2d) 601; Rose v. St. Louis Public Service Co., (Mo. Sup.) 205 S. W. (2d) 559.] However, such instructions must be directed to the fact issues necessary to prove an essential element and must not submit questions of law.

The judgment is reversed and cause remanded. All concur.