**C. D. FELKER, Plaintiff-Respondent,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, a Corporation, Defendant-Appellant.**

**No. 7454.**

Springfield Court of Appeals. Missouri.

March 1, 1956.

Henson & Henson, Poplar Bluff, for appellant.

Riddle & Baker, Malden, for respondent.

McDOWELL, Presiding Judge.

This action is by the beneficiary named in two insurance policies on the life of Lillie Mae Felker for double indemnity against Metropolitan Life Insurance Company of New York, insurer. The cause was tried in the Circuit Court of Dunklin County, Missouri, resulting in verdict and judgment for plaintiff for $1,342. Defendant appealed.

The insured carried two insurance policies in defendant company at date of death, February 3, 1954; one ordinary life policy for $1,000 and one Industrial policy for $342. These policies contained a provision providing for extra benefits if death resulted from accident.

By the terms of the agreement the insurer agreed to pay to the beneficiary of record under the policies, in addition to the amount payable according to the terms of the policy, a sum equal to the face of the policy "upon receipt, at the Home Office of the Company in the City of New York, of due proof of the death of the insured, as the result, directly and independently of all other causes, of bodily injuries sustained through external, violent and accidental means, * * *"

·The only issue presented here for judgment is, did plaintiff make a submissible case?

It is defendant's contention that the trial court erred in refusing to sustain defendant's motion for directed verdict at the close of plaintiff's case and at the close of all the evidence.

In ruling upon the question of whether plaintiff made a submissible case for the jury we must disregard defendant's evidence unless it aids plaintiff's case, and consider the evidence most favorable to plaintiff and favorable inferences drawn

therefrom. Ford v. Louisville & N. R. Co., 355 Mo. 362, 196 S.W.2d 163, 165; Bootee v. Kansas City Public Service Co., 353 Mo. 716, 183 S.W.2d 892; Palmer v. Lasswell, Mo.App., 267 S.W.2d 492.

The evidence shows that Lillie Mae Felker was insured with defendant company by two insurance policies for $1,342; one $1,000 policy and one for $342; that under the policies defendant was obligated to pay to the named beneficiary an additional sum equal to the amount of the face of policies if death of the insured was due to accident, caused directly and independently of all other causes.

In substance, the evidence is that Lillie Mae Felker was the divorced wife of plaintiff; that she was employed at the Liberty Cafe in Malden, her duties were washing dishes in the kitchen; that she came to work about 5:00 o'clock A. M., and seemed to be all right until about 8:30 or 9:00 o'clock when she told another employee, Ada Green, she was sick at her stomach. She kept going to the rest room but refused to go home or to have a doctor called; that about 10:00 o'clock, while she was in the rest room, the witness heard her scream and called Dr. Charles T. Edmondson; that when they opened the door Mrs. Felkner was discovered lying face down on the concrete floor of the rest room. Dr. Edmondson pronounced her dead and J. G. Schauman, the local undertaker, was called.

Plaintiff offered in evidence the two insurance policies. He then offered a certified copy of the death certificate which showed the cause of death to be "Accidental traumatism by fall".

Plaintiff testified that on the morning of February 3, 1954, he was notified, at his place of work in Kennett, of the death of insured; that he went immediately to Malden and found the body in the Day Funeral Home; that the body was moved to the Landess Burial Association in Campbell; that the funeral director showed him the body between 11:00 and 12:00 o'clock that night; that he observed three or four wounds thereon, indicating what part of the body they were on. He stated that one of the wounds was on her face and they were pretty large. Witness testified that the rest room where defendant's body was found had a very rough concrete floor with nothing on it. He stated he and the insured were divorced in November, 1952, but they still remained residents of Malden; that he saw her almost daily and she was in good health so far as he knew; that she worked every day. On cross-examination he admitted that years ago when he first married the insured she had some attacks of various things but had been cured. He testified he was 54 years old and deceased was 49 years of age. He admitted he secured from the state a certificate of death, made by the coroner of the county, which showed the cause of death was "coronary occlusion"; that he went to see the coroner and told him the insured had never had heart trouble; that the cause of death was by falling on the concrete floor and he testified he told the coroner all he knew about the cause of the death, about the wounds he had found on her face and forehead. He stated he had gone to the coroner at least twice and that the coroner filed an amended certificate of the cause of death which was offered in evidence here.

Plaintiff admitted that at the time he received the first certified copy of the certificate showing death by "coronary occlusion", he had not filed a claim for double indemnity. He stated he talked to defendant's agents about filing a claim; that he did not know whether they, at that time, knew what the original certificate of death showed; that they had informed him there was some question as to the cause of death; that he would have to secure a certified copy from the State of such certificate and send it in to the company with proof of death.

At the end of plaintiff's testimony defendant asked for directed verdict by motion on the grounds that plaintiff had failed to make a case, which was by the court overruled.

Dr. Quinton Tarver, coroner of Dunklin County, testified for defendant that he was

not present at the death of insured; that he did not see the body. He testified that he talked to J. G. Schauman, director of the Day Funeral Home in Malden, who was the local Registrar for that township, and, from the information received from Schauman, he prepared the initial death certificate showing cause of death to be "coronary occlusion". He admitted he signed this death certificate.

He testified that he was a medical doctor and made the report of the cause of death to the State in his official capacity as coroner. He testified the first death certificate was made February 6th; that he was contacted by plaintiff on the day of the death of insured; that plaintiff called him from Malden by telephone and told him that insured had not died of a heart attack; that he did not view the body nor was there an autopsy performed to his knowledge.

He testified he changed or amended the original death certificate; that he made findings of fact according to his best knowledge and belief as to the cause of death which he based the amended death certificate on. He testified that he had to make an affidavit that the change was legitimate; that the Bureau of Vital Statistics made a new certificate of death by taking the original certificate and marking out the stated cause of death and inserting amended cause of death; that in the certificate of death, as amended, the words "Coronary occlusion" were changed to "accidental traumatism by fall". He testified he made the statement as to the cause of death on his information and belief; that Mr. Felker had told him insured was in good health; that he didn't think she died from a heart attack; that he came to see him repeatedly and finally told him that the agents of the Metropolitan Life Insurance Company at Poplar Bluff had told him that if the coroner would fill out a new certificate of death, showing the cause to be accident, they would pay off and that was the reason he changed it on the basis of the persistency of plaintiff that insured could not have died of heart attack. He testified he had no knowledge of the cause of her death.

J. G. Schauman testified that he was the funeral director of the Day Funeral Home in Malden; that on February 3, 1954, he went to the cafe and found the body of insured, Lillie Mae Felker, on the floor; that he noticed she had a bruise on her cheek bone and one on her forehead above the eye. He stated the bruise on the cheek was a cut and there was a small amount of blood; that the one on the forehead was kind of a knot, like you would hit some hard object; that it protruded to some small extent and was about the size of a quarter. He testified he didn't see any froth at her mouth and that he did not prepare the body. On cross-examination he stated that the knot on insured's head above the eye was a little larger than the other one; that the one on the cheek was not a knot but a cut. He testified that the floor of the rest room was concrete.

Ada Green testified for defendant that she was employed as a cook at the Liberty Cafe, was present on the morning of February 3, 1954, when insured came to work about 5:00 o'clock; that the death took place approximately at 10:00 o'clock; that Mrs. Felker worked up until her death washing dishes. She testified they talked about different things until just before her death; that she tried to get her to go home. She stated that insured acted fine when she came to work but about 8:30 or 9:00 o'clock she kept going to the bathroom; that she didn't pay any attention until about 9:30 or 10:00 when she noticed insured was not acting right. She stated she didn't want to go home and she didn't want witness to call the doctor; that she finally owned up that she was sick at her stomach and went to the bathroom; that witness sent for a doctor and when he got there she was dead; that she died in the bathroom. She made this statement: "We opened the door." She stated she bathed insured's face and didn't know she was dead; that there was a kind of foam like around her mouth; that she washed it off. On cross-examination she testified she heard deceased scream but did not hear her fall; that the floor of the bathroom was bare concrete; that when she first saw deceased she was lying on her stomach, her face next to the concrete.

Pearl Warmack testified that she was the owner of the Liberty Cafe but was not present on February 3rd when insured died. She stated she did not know what caused her death; that she talked to Mr. Felker, plaintiff, on that afternoon in the restaurant and he stated that deceased was subject to some kind of epileptic spells which had started several years ago but she didn't remember if he said how long they lasted. She stated that deceased had worked for her about three and one-half months; that she would be off and come back; that she just worked like the other employees and was never off because of ill health or sickness and, as far as witness knew, she was a healthy person.

Dr. Charles T. Edmondson testified for defendant that he is a doctor, of medicine, practicing in Malden; that he was called to the Liberty Cafe about 10:00 o'clock in the morning to examine Mrs. Felker, who they said had fallen in the bathroom or they had heard her hit the door and they called him to see if the woman was dead; that he made a superficial examination and pronounced her dead. He stated he observed her head and face and found a small bruise on the forehead which was a blueness or discoloration of the skin; that there were no flesh wounds or lacerations; that it probably was the size of a half dollar or a little larger and that that was all he noticed. On cross-examination he said that whoever called him stated Mrs. Felker had fallen. He gave this testimony:

"Q. Well, I am asking you, Doctor, if the size of that knot there could have caused her death? A. It's possible, yes."

Defendant's first allegation of error complains that the trial court erred in overruling defendant's motion for directed verdict at the close of plaintiff's case.

■ Such motion was waived by defendant's proceeding to offer evidence in its behalf. Porter v. Equitable Life Assur. Soc. of United States, Mo.App., 71 S.W.2d 766; Palmer v. Security Ins. Co. of New Haven, Conn., Mo.App., 263 S.W.2d 210; Section 510.280 RSMo 1949, V.A.M.S.

Defendant's second allegation of error is that the trial court erred in failing to direct a verdict at the close of the whole case.

In defendant's argument it states: "Plaintiff failed to make a submissible case. It is the theory of the plaintiff in this case that the amended death certificate which stated that death was due to 'accidental traumatism by fall' made a prima facie case submitting the issues to the jury; however, the matters stated in a death certificate are prima facie correct but are not evidence on which to base a verdict but merely raise a legal presumption which requires the defendant to go forward with evidence. However, the burden is upon the plaintiff to make proof of the allegations in his petition and remains there until the close of the case. The defendant, Metropolitan Life Insurance Company, proved by Dr. Quinton Tarver, Coroner of Dunklin County, Missouri, who executed the death certificate upon which plaintiff relies, that the statements contained in the death certificate were not facts upon which a judgment could be rendered but were mere conclusions inasmuch as Dr. Tarver had no personal knowledge of the facts contained therein. The evidence presented by the plaintiff in making his case is based upon pure conjecture and in the realm of uncertainty.

"For the causes herein stated, Appellant respectfully submits that the plaintiff failed to substantiate his charges that death was due to accidental means. The verdict was a manifest miscarriage of justice and the judgment should, therefore, be reversed with directions to enter judgment for the defendant on plaintiff's petition."

This was all of the argument presented by defendant.

■ In considering the sufficiency of the testimony to make a submissible case the evidence of the plaintiff is to be taken as true and all reasonable inferences that can be drawn therefrom and any evidence offered by the defendant that supports plaintiff's case. Young v. Wheelock, 333 Mo. 992, 64 S.W.2d 950; Bray v. St. Louis-San

Francisco Railway Co., Mo.App., 236 S.W.2d 758, 761; O'Connor v. Egan, Mo. App., 274 S.W.2d 334; Palmer v. Security Ins. Co. of New Haven, Conn., supra; Ford v. Louisville & N. R. Co., 355 Mo. 362, 196 S.W.2d 163, 167.

 We agree with defendant's statement of law in his argument that the burden of proof rests upon plaintiff to make proof of the allegations in his petition and remains there until the close of the case. If a prima facie case was made by the offering of the certificate of death the burden of going forward with the evidence shifted to the defendant but the final determination of the cause of death required plaintiff to meet the burden of proof.

Section 193.170 RSMo 1949, V.A.M.S., reads as follows:

"Certificates filed within six months after the time prescribed therefor shall be prima facie evidence of the facts therein stated. * * *"

This same statement of the law was declared in section 9781, R.S.Mo. 1939. Article 2, Chapter 57, consisting of sections 9760 to 9783, of the revised statutes of 1939 was repealed by the legislature, Laws of Missouri 1947, Vol. II, p. 237, yet the same statement of the law has been continued for many years.

It is the contention of defendant that the amended certificate of death, offered in evidence, was made by the coroner of Dunklin County without personal knowledge of the facts stated therein; that he secured the information from which he made the certificate of death from plaintiff and that because of such evidence the prima facie effect thereof was nullified. To support this contention Callahan v. Connecticut General Life Insurance Co., 357 Mo. 187, 207 S.W.2d 279, 285 is cited.

The court held in this case that statements in coroner's certificate of death that "suicide" was "contributory" to the death of the insured was not a statement of facts in contemplation of the statute. In this case the plaintiff offered in evidence the

death certificate of insured which, in part, read: "22. * * * (a) Accident, suicide, or homicide specify). *Accident* * * * (e) Means of injury. *Got wet feet.*" The doctor who executed the death certificate was not present when insured was injured and insurer, recognizing the certificate generally was competent prima facie evidence, objected to the answers on the specific ground that they were not statements of fact. The court made this statement of law:

"* * * A certificate executed by one having no personal knowledge of the facts whatsoever is inadmissible. Thrower v. Life & Casualty Ins. Co., Mo.App., 141 S.W.2d 192, 197 (11). Consult Commercial Bank v. Barksdale, 36 Mo. 563, 572."

This conclusion was supported by Schmidt v. Supreme Council of Royal Arcanum, Mo.App., 207 S.W. 874, 875.

In the Callahan case, supra, on page 287 of 207 S.W.2d, this law is stated:

" 'It is true that a mere probability is not proof * * *.' We think the broad statement in Simpson v. Wells, 292 Mo. 301, loc. cit. 322, 237 S.W. 520, loc. cit. 525, that all matters required to be stated in the certificate are prima facie evidence should be restricted to statements of fact."

 Under this authority we think that had there been an objectoin of the defendant to the offering of the certificate of death, it would have been error not to have sustained it. However, when the offer was made defendant's counsel said "no objection".

It is the general rule that the statute not only authorizes that death certificates can be used as evidence, but, it made them prima facie evidence of the facts required to be stated. Randolph v. Supreme Liberty Life Ins. Co., 359 Mo. 251, 221 S.W.2d 155, 157; Boring v. Kansas City Life Insurance Co., Mo.Sup., 274 S.W.2d 233, 239. In this case the court stated:

"As hereinabove stated, plaintiff relied upon the well-grounded doctrine that the

certificate of death alone raised a legal presumption that insured's death resulted from accidental means, which placed upon defendant the burden of going forward with evidence to establish its pleaded defense of non-accidental death. * * *"

In this case it is also held that the presumption raised by such certificate of death is a rebuttable presumption. Pettit v. United Benefit Life Ins. Co., Mo.App., 277 S.W.2d 857.

In the certificate of death, offered in evidence as plaintiff's exhibit (C), the cause of death is stated "Accidental traumatism by fall". Without objection, this is a statement of fact. However, evidence was offered by the defendant that the certificate of death was made by Dr. Quinton Tarver, M. D., who was the coroner of Dunklin County. He testified he did not see the body and that he based his opinion as to cause of death upon information received from plaintiff. He testified that on February 6, 1954, he had made a certificate of death on information furnished by J. G. Schauman, Funeral Director at Malden, who was the local Registrar for the State, and in this certificate of death he stated the cause of death to be "coronary occlusion".

■ The law in Missouri is well settled that the cause of death stated in the certificate creates a presumption but it is a rebuttable presumption and the burden of proof remains on plaintiff to prove its case. And that was the theory on which it was presented to the jury. If the offer of the death certificate was the only evidence from which the jury could have determined the cause of death, we would sustain the contention of defendant that plaintiff failed to make a case. However, that is not all of the evidence offered.

There was no contention that if the insured's death was caused by accident as determined by the policies plaintiff was entitled to recover. The insurance policies and the death of insured were admitted. The only question raised is, did the insured die of an accident independent of all other causes?

Defendant filed a general denial and a special plea that death was caused or partially caused by epileptic seizure.

We have set out the evidence and we hold that defendant wholly failed to establish its defense that some disease was partially a cause of death. The only testimony upon which such defense could be predicated was testimony of plaintiff, on cross examination, that back when he and Mrs. Felker were married she had some attacks of various things but she had been cured; that that was years ago and the testimony of defendant's witness, Pearl Warmack, that she talked to Mr. Felker on the date his wife died and he stated she was subject to some kind of epileptic spells. Plaintiff testified that the insured was in good health at the time of her death; that she worked every day. This testimony was corroborated by defendant's testimony. Pearl Warmack, owner of the Cafe and employer of insured, testified that prior to insured's death she had been working for the witness for three and one-half months and that she was never off because of sickness.

Plaintiff testified that the undertaker showed him the body of insured between 11:00 and 12:00 o'clock the night of June 3, 1954, before the body had been prepared for burial; that he observed on her face and head three separate wounds, one on her cheek and one (indicating) and one on her forehead; that the wounds were very deep. This testimony was corroborated by defendant's evidence. The undertaker at Malden testified that he observed a cut on insured's cheek and a bruise or knot on her forehead and Dr. Charles T. Edmondson, who was called when insured died and who pronounced her dead, testified that he observed a small bruise on her forehead which showed a blueness or discoloration of the skin; that the place was about the size of a half dollar or a little larger. He testified that when he was called the caller stated that Mrs. Felker had fallen. When

asked on cross-examination if, in his opinion, the bruise he observed on insured could cause death, he answered: "It's possible, yes". Plaintiff testified that the bathroom floor, where deceased's body was found, was very rough concrete with nothing on it. A number of defendant's witnesses testified to that fact. From this evidence we believe that the jury could have found that the cause of death was a fall resulting in bodily injuries sustained through external, violent and accidental means directly and independently of all other causes, especially since there was no evidence to justfy any other cause of death or contributing cause.

Following the law that in determining whether plaintiff made a submissible case for the jury, reviewing court views the evidence and legitimate inferences to be drawn therefrom in the light most favorable to plaintiff, we find that the judgment must be affirmed. Floyd v. St. Louis Public Service Company, Mo.Sup., 280 S.W.2d 74.

Judgment affirmed.

STONE, J., concurs in result.

RUARK, J., concurs.